J. A. WATSON, Appellant, v. FRED C. KERR, H. R. McCAW, ROBERT McCAW, FRITZ DURR and E. C. CLEINO.

Division One, January 23, 1926.

1. **COUNTY INDEBTEDNESS: In Excess of Yearly Income: Constitutional Inhibition.** Under the constitutional provision (Sec. 12, Art. X) declaring that "no county . . . shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the consent of two-thirds of the voters thereof," an indebtedness is not invalid merely because it appears at the end of the year in which it was created that the aggregate indebtedness incurred by the county during the year exceeded the revenue actually collected. If at the time of its creation the indebtedness is within the income which may reasonably be anticipated it is valid.

2. ———: ———: ———: **Anticipation: Erroneous Conclusions.** Where it cannot be determined from the record what income from sources other than the property taxes could in March, 1922, have been reasonably anticipated for the year, and the income in 1921 was

Watson v. Kerr.

practically double that received in 1920, and the county court may reasonably have concluded, from the data before it, which is not before this court, that there would be a like percentage of increase in 1922, it will not be held that the entire indebtedness which subsequently developed, and by which it became apparent that its expenditures exceeded the income for the year, was invalid, although some of it was incurred through its action before such situation disclosed itself. In such case, where the good faith of the court is not impeached by anything that appears in the record, the court may have been of the opinion in March that an indebtedness for an infirmary site could be incurred and the total expenditures still be kept within the income; and mere error of judgment is not sufficient to declare the debt invalid; to have that effect there must have been fraud or a palpable attempt to evade the constitutional provision.

3. ————: Creation: Site for Infirmary: Payment out of Current Revenue: Statutory Authority: Priority of Warrants. The county court is not compelled to follow the special procedure provided by the Cottey Act (Secs. 12859, 12860, R. S. 1919) as the method of obtaining money wherewith to pay for the site of a county infirmary, nor is it compelled, if that procedure is not followed, to submit to the legal voters a proposition to incur an indebtedness for such purpose. That act and the later statute (Secs. 9458, 9459, R. S. 1919) are of like efficacy and deal with the same subject-matter and are to be read together, and these later sections authorize the county court to pay for an infirmary site out of taxes levied and collected for current county expenditures, and warrants drawn for that purpose stand on a parity with other warrants drawn against the same fund.

Counties, 15 C. J., Section 279, p. 575, n. 56; Section 280, p. 578, n. 88; Section 313, p. 606, n. 50 New; Section 348, p. 634, n. 56. Statutes, 36 Cyc., p. 1147, n. 28, 30.

Appeal from Phelps Circuit Court.—*Hon. R. A. Breuer, Judge.*

Affirmed.

*L. B. Woodside, J. A. Watson, W. D. Jones, Lorts & Bruener* and *Jones & Jones* for appellant.

(1)   It appearing from the undisputed evidence that the total assessed valuation of Phelps County of all taxable property in said county for the year 1922, was $7,-893,218; that the rate of taxation of 40c on each $100 valuation of said assessment produced a gross revenue of $31,932.87 for the ordinary current county expenditures; this fixed a limit for the ordinary current expenditures of Phelps County for the year 1922, and any indebtedness created which would carry the expenditures of the county beyond that limit without the assent of two-thirds of the qualified voters of the county, voting at an election to be held for that purpose, was and is void.  Book v. Earl, 87 Mo. 252; Anderson v. Ripley County, 181 Mo. 46; Harris v. Compton Bond Co., 244 Mo. 664, 693; State ex rel. Clark County v. Hackman, 218 S. W. 319.  (2)   The purposes of Sections 11 and 12 of Article 10 of the Constitution were to limit the power of counties and other municipalities to incur indebtedness beyond the income and revenue provided for in any one year, and also to limit the rate of taxation for raising the annual revenue required for local purposes.  Book v. Earl, 87 Mo. 252; Harris v. Compton Bond Co., 244 Mo. 664, 693; Trask v. Livingston County, 210 Mo. 582, 37 L. R. A. (N. S.) 1048; State ex rel. Clark County v. Hackman, 218 S. W. 319; Hillside Securities Co. v. Mintener, 254 S. W. 188.  (3)   The undisputed evidence shows that at the May term, 1922, of the County Court of Phelps County, the court made an order, as it was required by law to do, setting apart, appropriating, apportioning, and subdividing the revenue produced by the tax levy of 40c on each $100 valuation of the total assessment of the county for that year for county purposes, as provided by Sections 12,971 and 12,972.   Said funds when set apart, appropriated and apportioned became a sacred fund for the purposes for which they were designated, and the county court had no power to divert the same or to permit the funds set apart to be drawn from the treasury of such county, except by warrants issued by order of such court on the respective funds so set apart and for the purpose in Sections 12,971 and 12,972 specified and

set forth. R. S. 1919, sec. 12,975; Mountain Grove Bank v. Douglas County, 146 Mo. 42; State ex rel. v. Everett, 245 Mo. 715; State ex rel. v. Taylor, 244 Mo. 466. (4) It is made the duty of the county treasurer to separate and subdivide the revenues of his county in his hands, and as they come into his hands in compliance with the order of the county court, and it is made his duty to pay out the revenue thus subdivided, on warrants issued by the order of the court on the respective funds and not otherwise, and no warrant can be paid out of any fund other than that upon which it has been drawn by order of the county court. R. S. 1919, sec. 12,976; Right v. Hortsman, 149 Mo. 270. (5) It is expressly provided that no warrants issued on account of any debt incurred by any county other than those issued on account of the ordinary and usual expenses of the county, shall be paid until all warrants issued for money due from the county on account of services that are usual, and for all expenses that are necessary to maintain the county's organization for one year, shall have been fully paid and liquidated. R. S. 1919, sec. 9537; State ex rel. v. Johnson, 162 Mo. 621; State ex rel. Clark County v. Hackman, 280 Mo. 396. (6) The contract entered into between the County Court of Phelps County and H. R. McCaw, on the 16th day of March, 1922, for the purchase of a poor house and infirmary site for $17,000 being an unusual and extraordinary expenditure, and there being no surplus, or surplus that could be anticipated in the treasury for the payment of the same, after paying all the usual, ordinary, current, expenses of the county for the year 1922 and the then existing indebtedness for prior years, and the undisputed evidence showing that said contract provided for the creation of an indebtedness which exceeded the limit as prescribed by the Constitution, it was in violation thereof and void. Sec. 12, Art. X, Mo. Constitution; Book v. Earl, 87 Mo. 246; Bank of Rolla v. Johnson, 162 Mo. 621; Holloway v. Howell County, 240 Mo. 601; Decker v. Deimer, 229 Mo. 296; Trask v. Livingston County, 210 Mo. 882; State ex rel. Clark County v. Hackman, 218 S. W. 319.

*Frank H. Farris* and *James Booth* for respondents.

(1)     Section 11 of Article X of our Constitution fixes the limitation of counties as to the rate of taxation for raising the annual income and revenue required for local administrative and general purposes of county government.  Lamar W. & E. L. Co. v. City of Lamar, 128 Mo. 195; Harris v. Bond Co., 244 Mo. 693.  There is no question in this cause which invokes the aid of this section of the Constitution.  There is no claim made that taxes in excess of the constitutional limit were assessed and levied. The purpose of this section in our Constitution was to place municipal governments upon a cash basis; but its construction and application has always been based upon reason, common sense and general business knowledge, of which the courts have taken judicial cognizance.  That is, that the cash receipts and revenue generally of a county cannot be calculated with exactness nor certainty, and that its financial obligations are and of necessity must be figured upon, estimated and anticipated revenue, and must include all sources of its revenue.  Book v. Earl, 87 Mo. 252; Trask v. Livingston County, 210 Mo. 592; State v. Hackman, 218 S. W. 319.  The full amount of these warrants was at the time of the bringing of the suits, and is now in the hands of the defendant treasurer to the credit of the contingent fund.  (2)     A county warrant, valid when issued, is not rendered invalid because the revenue provided to pay it is not collected during the year in which it was issued, and warrants are to be paid in the order of their presentation and registration, and may be paid out of the surplus of other years, when the revenue for the year in which they were drawn is exhausted.  State ex rel. v. Johnson, 162 Mo. 629; Decker v. Diemer, 229 Mo. 330.  (3)     The contract for the purchase of this infirmary was made under Sections 9458 and 9459, Revised Statutes of 1919.  (4)     The county treasurer cannot refuse the payment of any warrant legally drawn upon him and presented for payment, for the reason that warrants of prior presentation have not been paid, when there shall .

be money in the treasury belonging to the fund drawn upon, sufficient to pay such prior warrants, and the warrants so presented. R. S. 1919, secs. 9537, 9538. (5) Where the provisions of two acts are not antagonistic or inconsistent, it is the duty of the court to harmonize and preserve them. Decker v. Diemer, 229 Mo. 331; State v. Long, 204 S. W. 916.

RAGLAND, J.—Plaintiff who is a taxpayer of Phelps County and also the holder of a warrant drawn on the contingent fund of said county seeks by this action to have the payment of certain other warrants drawn prior to his against said fund enjoined and those warrants canceled . The defendant Kerr is the Treasurer of Phelps County; the other defendants are the holders of the warrants which it is sought to have canceled.

The facts as gathered from the evidence and the admissions made by the pleadings may be succinctly stated as follows:

On the 16th day of March, 1922, the County Court of Phelps County entered into a contract with defendant McCaw for the purchase of 200 acres of "improved and unimproved" land, "for the use and benefit of such county as a poor house and infirmary," agreeing to pay therefor the sum of $17,000, the contract reciting: "which said sum is to be paid out of the contingent fund and out of any surplus of any other fund or funds belonging to Phelps County." On March 28th, McCaw having furnished an abstract of title and delivered a deed of conveyance, in conformity with the terms of the contract, the county court caused to be issued and delivered to him, among others, ten county warrants, numbered from 269 to 278 inclusive, each being for $500 and payable out of the contingent fund of the county.

Neither on the date of the purchase of the farm nor on that of the issuance of the purchase money warrants was there any money in the contingent fund or a surplus in any other fund belonging to the county. On the contrary there were on the latter date warrants to the amount

of $1,231.64, drawn on the contingent fund for current expenses for the year 1922, outstanding and unpaid for lack of funds. There were also other outstanding warrants in addition to these which had been issued in previous years.

On April 12, 1922, defendant McCaw presented to the county treasurer for payment the ten warrants issued to him in payment of the purchase price of the farm sold the county, but for lack of funds they were not paid and that fact was certified to by the county treasurer on the back of the warrants.

At the May term, 1922, the county court, pursuant to statute, made a finding as to the sum necessary to be raised by taxation for county purposes for that year and fixed the rate. Its record recites: "Now, at this date the court taking into consideration the matters and things relating to the revenue of Phelps County, Missouri, the court finds that the total valuation of the county . . . for the year 1922 is more than $6,000,000 and less than $10,000,000. . . . And the court finds it necessary to raise the sum of $48,000 for county purposes and to effect this it levies for county revenue 40 cents on the $100 valuation which is classified as follows, to-wit:

"For county road and bridge purposes that there be levied and collected upon all real estate and personal property assessed in the County of Phelps for the taxes of 1922, a road tax of 10c on the $100 valuation in accordance with the provisions of Section 10682 of the Revised Statutes of Missouri 1919.

"For the pauper and insane expense 11c on the $100 valuation.

"For the salary expense 10c on the $100 valuation.

"For the jury and election expense 5c on the $100 valuation.

"For the contingent expense 4c on the $100."

The abstract of the assessment of the real estate and personal property in Phelps County subject to taxation for the year 1922, showing a total valuation of $7,503,183.-44, was sent by the county clerk to the State Auditor

March 8th. It was received back after having been re-
vised to some extent by the State Tax Commission, or
State Board of Equalization, but without change as to the
total valuation, on April 8th. It did not of course include
assessments of railroad and telegraph property and the
stocks and materials of merchants and manufacturers
which were not received until August and September fol-
lowing.

The total income actually received by Phelps County
from all sources in 1922, excluding the tax levied for
road and bridge purposes, was $31,072.21. This was
credited to the several funds of the county as follows:
pauper and insane, $9,347.71; salary, $12,321.96; jury and
elections, $4,606.58; and contingent, $4,795.96. The total
county expenditures for the year and for which warrants
were drawn against the funds just mentioned aggregated
$57,000.

In 1920 the total assessed valuation of all property
subject to taxation in Phelps County, including that of
railroads, telegraph and telephone companies and mer-
chants and manufacturers, was $5,956,175.84. There was
a fifty cent levy, ten cents being for road and bridge pur-
poses. Under that levy there was realized for the pauper
and insane, salary, jury and elections and contingent
funds the sum of $23,824.69, to which was added $2,875.-
82 received from other sources. At the time of the trial
in March, 1924, there were outstanding unpaid warrants
drawn in 1920 against the four funds just named to the
amount of $9,876.28. From the figures set forth in this
paragraph the conclusion may be drawn that the county
expenditures, other than for road and bridge purposes,
in the year 1920 amounted to at least $36,567.78.

In 1921 the total assessed value of property of all
kinds subject to taxation in the county was $9,763,652.
A levy of 40 cents on the $100 valuation was made, the
maximum permitted by the Constitution where the total
valuation falls between six and ten millions. Under that
levy there was realized for county purposes, other than
for road and bridge purposes, $29,290.98. And from

other sources the further sum of $5,570.98, making the total income from all sources for the year 1921, $34,861.23. At the time of the trial there were outstanding warrants which were drawn against this fund in 1921 to the amount of $4,477.30. The figures just set forth tend to show that the total county expenditures for the year 1921, other than for road and bridge purposes, amounted in the aggregate to $39,338.53.

This suit was instituted on the 17th day of March, 1923. On that date there was money enough in the county treasury to pay the ten warrants issued to the defendant McCaw and the holders thereof were demanding payment. On the filing of the petition herein a temporary restraining order was issued, enjoining the county treasurer from paying the warrants, and that order, notwithstanding the circuit court on the hearing found the issues for defendants and dismissed plaintiff's bill, was continued in force pending this appeal.

The grounds upon which plaintiff predicates the invalidity of the warrants in question are set forth in his bill as follows: ''That the purchase of said tract, and the creating the indebtedness therefor, was not a current expense of said county, and the said county court had no right or authority in law to create said indebtedness without the vote of the qualified voters of said county authorizing it, the said county court, so to do, as is provided by Section 12 of Article 10 of the Constitution of the State of Missouri, which was not had, and said county court had no legal authority to levy any taxes upon the property of the inhabitants and taxpayers of said county for the payment thereof, or to provide for the payments of said warrants out of any funds without an order of the circuit court or the judge thereof in vacation, which was not obtained.''

The bill prays that the county treasurer ''be enjoined and restrained from paying said warrants so issued as aforesaid in payment of said tract of land until all warrants drawn by order of the county court for the expenses of the said year 1922, and also all warrants drawn for all

prior years and which are still unpaid, be duly paid and specified.'' And further that the warrants be declared invalid and that they be canceled.

From the paragraph of the bill heretofore quoted it appears that appellant's contention is that the indebtedness for which the warrants in controversy were issued in part payment is not a valid county obligation. This because it was made, as it is alleged, in contravention (1) of Section 12 of Article 10 of the Constitution, and (2) of the provisions of Sections 12859-12860, Revised Statutes 1919, known as the Cottey Act. These two grounds of invalidity we will consider in the order named.

I. The constitutional provision invoked is this: "No county, city, town, township, school district or other political corporation or subdivision of the State shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose.''

It is entirely clear from the record that the County of Phelps became indebted in the year 1922 in a sum greatly in excess of the income and revenue provided for that year. But in construing the constitutional provision just quoted we have repeatedly held that an indebtedness is not invalid merely because it appears at the end of the year in which it was created that the aggregate indebtedness incurred by the county during that year exceeded the revenue actually collected. If at the time of its creation the indebtedness is within the income which may reasonably be anticipated it is valid. [State ex rel. v. Hackmann, 280 Mo. 686; State ex rel. v. Johnson, 162 Mo. 621.]

Whether the indebtedness for the infirmary site in addition to that which would necessarily have to be incurred thereafter in maintaining the county organization was, in March, 1922, within the anticipated income for that year is on the facts disclosed by the record a ques-

tion exceedingly difficult of solution. What estimate the county court then made with respect to receipts and expenditures for the year was not shown. It knew of course that the income for the previous year, aside from road and bridge taxes, was in round numbers $35,000 and that the expenditures for the year exceeded that sum by $4,-500. But it also knew that the income for the year 1921 exceeded that of 1920 by $8,000, as a result largely of an increase to the extent of approximately $4,000,000 in the total assessed valuation of property subject to taxation, made by the State Tax Commission. The abstract of the assessor's books on file with the county clerk at the time showing a lower valuation than that of 1921 was of no particular significance; it did not include assessments of the property of railroad, telegraph, telephone companies and merchants and manufacturers, and besides the Tax Commission was still functioning at the State Capital. We have no means of knowing what income from sources other than the property taxes could in March, 1922, have been reasonably anticipated for the year. Such income in 1921 was practically double that received in 1920 and the county court from the data it had before it, and which we do not have before us, might reasonably have concluded that there would be a like percentage of increase in 1922.

County expenditures which are necessary to maintain the county organization, such as salaries, are fairly constant; but the making of others lie to a great extent within the discretion of the county court, and consequently may be limited or entirely withheld. What fixed sum was necessary to enable the county organization of Phelps County to function throughout the year the record does not show. The total expenditures for county purposes, other than road and bridge, was $36,000 in 1920 and $39,000 in 1921. But the specific purposes for which those expenditures were made is not disclosed. In their aggregates they may have represented abnormal experiences in the county's fiscal affairs. Consequently we can not determine from them, or from any other data before

us, what sum in 1922 could reasonably have been deemed necessary to pay for the infirmary site and keep the county organization intact and properly functioning.

It is quite clear that the county court, in May when it made the levy, estimated that the taxes accruing therefrom together with other sources of income would yield the sum of $48,000 and that that sum would be sufficient to meet the current expenses of the county for the year. This estimate necessarily included the indebtedness which had at that time been already incurred in the purchase of the infirmary site. The contract of purchase on its face shows that it was intended to be a cash transaction, that is, that the purchase price was to be paid out of funds received into the treasury during the year. From the record facts it is clearly inferrable that the court in estimating the income and expenditures for the year was of the opinion that the indebtedness for the infirmary site could be incurred and the total expenditures still be kept within the income. Its good faith in the matter is not impeached by any thing that appears in the record. Mere error of judgment is not sufficient for that purpose; there must have been fraud or a palpable attempt to evade the constitutional provision. [Decker v. Diemer, 229 Mo. 296.]

As the indebtedness resulting from current expenditures mounted up during the year, reaching an aggregate of $57,000 at its close, it must at some time have become apparent that the indebtedness as a whole would exceed the income for the year. But even so, it cannot be held that the entire indebtedness to the extent it was created by the county court, or that incurred through its action before such situation disclosed itself, is invalid.

On the showing made appellant's contention under this head must be overruled.

II. The Cottey Act was passed in 1879 shortly after the adoption of the present Constitution. It is embodied substantially in what are now Sections 12859 and 12860,

Revised Statutes 1919. Those sections so far as pertinent to the present controversy are as follows:

"Sec. 12859: The following named taxes shall hereafter be assessed, levied and collected in the several counties in this State, and only in the manner, and not to exceed the rates prescribed by the Constitution and laws of this State, viz.: The state tax and the tax necessary to pay the funded or bonded debt of the State, the funded or bonded debt of the county, *the tax for current county expenditures,* the taxes certified as necessary by cities, incorporated towns and villages, and for schools."

"Sec. 12860: No other tax for any purpose shall be assessed, levied or collected, except under the following limitations and conditions, viz.: The prosecuting attorney or county attorney of any county, upon the request of the county court of such county—which request shall be of record with the proceedings of said court, and such court being first satisfied that there exists a necessity for the assessment, levy and collection of other taxes than those enumerated and specified in the preceding section—shall present a petition to the circuit court of his county, or to the judge thereof in vacation, setting forth the facts and specifying the reasons why such other tax or taxes should be assessed, levied and collected; and such circuit court or judge thereof, upon being satisfied of the necessity for such other tax or taxes, and that the assessment, levy and collection thereof will not be in conflict with the Constitution and laws of this State, shall make an order directed to the county court of such county, commanding such court to have assessed, levied and collected such other tax or taxes, and shall enforce such other by *mandamus* or otherwise."

It is the contention of appellant that the purchase of an infirmary site is not a "current county expenditure" within the meaning of Section 12859 and consequently that such a purchase can be made only from funds derived from a special levy made in accordance with the provisions of Section 12860, or else from the proceeds of a bond issue voted for that purpose. But many years

312 Mo.—36

after the passage of the Cottey Act what are now Sections 9458 and 9459, Revised Statutes 1919, were enacted. They provide: "The county court of any county . . . shall have power to acquire by purchase . . . improved or unimproved real estate for a site for . . . infirmary. . . . The county court . . . may pay for the real estate acquired . . . out of any money in the county treasury belonging to the contingent fund or out of any surplus in any other fund at the close of any fiscal year, after the payment of all warrants drawn during such year against such fund and all other previously issued and outstanding warrants against the same." These provisions and those of the Cottey Act are of like efficacy, deal in part with the same subject-matter and should therefore be read together. [Decker v. Diemer, supra.] When so considered the buying of an infirmary site must be regarded as a current expenditure; in any event the county court is expressly authorized to pay for such a site out of taxes levied and collected for current county expenditures. As specific authority is given for the making of the payment out of the contingent fund, without imposing conditions or restrictions of any kind, there is no reason why warrants drawn for that purpose, in respect to the order of their payment, should not stand on a parity with other warrants drawn against the same fund.

For the reasons herein appearing the judgment of the circuit court should be affirmed. It is so ordered. All concur.