R. S. STERLING V. MIRIAM A. FERGUSON ET AL.

No. 6327. (Certified Question).

MIRIAM A. FERGUSON ET AL. V. HONORABLE JANE Y. McCALLUM, SECRETARY OF STATE.

No. 6328. (Mandamus).
Decided October 8, 1932.
(53 S. W., 2d Series, 753.)

124

*C. S. Bradley,* of Groesbeck, *Sam McCorkle,* of Mexia, *M. M. Crane,* of Dallas, and *Roy L. Arterbury,* of Houston, for R. S. Sterling and Mrs. Jane Y. McCallum.

The Supreme Court is without power to issue mandamus in disregard of a judgment of a District Court having jurisdiction of the subject matter. Matthaei v. Clark, 110 Texas, 114, 216 S. W., 856; Teat v. McGaughey, 85 Texas, 478; Davis v. Terrell, 100 Texas, 291; Glenn v. Milam, 114 Texas, 160, 263 S. W., 900; State v. Fisher, 94 Texas, 491, 62 S. W., 540; Ashford v. Goodwin, 103 Texas, 491, 131 S. W., 535. On question of the case being moot. 1 C. J., p. 974, secs. 68, 69.

*Luther Nickels,* of Dallas, *Ocie Speer,* of Austin, and *John H. Bickett, Jr.,* of San Antonio, for relators, Mrs. Miriam A. Ferguson and her husband.

In a statutory cause of action like a contest, the time within which the same must be brought is itself a part of the cause of action and is a jurisdictional element. It is not a matter of limitations to be pleaded in defense, it is a part and parcel indispensably connected with the cause of action. Mingus v. Wadley, 115 Texas, 551, 285 S. W., 1084.

That it is the duty of a court, when an action pending before it has become moot or obviously will become moot before any effective judgment can be rendered therein, to dismiss the action, is thoroughly well settled in the practice. Walker v. Hopping, 226 S. W., 146; McWhorter v. Northcutt, 58 S. W., 720; Lacoste v. Duffy, 49 Texas, 767; 3 Texas Jur., p. 966.

The certificate of nomination (like a certificate of election) is at least and in any event "prima facie evidence of the right."

Dean v. State, 88 Texas, 290, 30 S. W., 1047; State v. Owens, 63 Texas, 261, 268; 9 R. C. L., p. 1113.

Since the right of Mrs. Miriam A. Ferguson, the duly certified democratic nominee for governor, to appear as such on the official ballot at the general election will now immediately be destroyed by force of mandatory statutory time requirements for the preparation of the ballot, there could be no timely, specific, or appropriate relief to such nominee through the ordinary process of a trial and judgment in the District Court and an appeal therefrom; and, therefore, the Supreme Court should grant the writ of mandamus forthwith. Cleveland v. Ward, 116 Texas, 1, 285 S. W., 1063; Yett v. Cook, 115 Texas, 175, 268 S. W., 715, 281 S. W., 843; Houtchens v. Mercer, 119 Texas, 431, 29 S. W. (2d) 1031, 119 Texas, 244, 27 S. W. (2d) 795; Bradley v. McCrabb, Dallam, 507; Way v. Coca Cola Bottling Company, 119 Texas, 419, 29 S. W. (2d) 1067.

MR. CHIEF JUSTICE CURETON, MR. ASSOCIATE JUSTICE GREENWOOD and MR. ASSOCIATE JUSTICE PIERSON, acting jointly, delivered the opinion of the court.

This is an original proceeding by Mrs. Miriam A. Ferguson, joined pro forma by her husband, James E. Ferguson, to procure the issuance of a writ of mandamus to compel Mrs. Jane Y. McCallum, as Secretary of State, to certify Mrs. Ferguson's name as the nominee of the democratic party of Texas as a candidate for governor at the forthcoming general election. Governor R. S. Sterling, in his private capacity, is also named as a party respondent in the petition for mandamus, because of his personal interest in the subject matter of the controversy.

The facts leading up to this proceeding will be briefly stated in their chronological order.

The relator Mrs. Miriam A. Ferguson and the respondent R. S. Sterling were contending candidates at the second State democratic primary held on the 27th day of August, 1932. The State Democratic Convention, which met at Lubbock on the 13th day of September, 1932, upon the certificate of the State Committee after a canvass of the election returns declared that Mrs. Ferguson was the nominee of the democratic party for the office of governor, and her nomination was duly certified by the Chairman and Secretary of that convention to the respondent Mrs. McCallum, as Secretary of State. On the 22d day of September, 1932, the respondent Governor R. S. Sterling filed in the district court of Travis County, 126th District, an original petition, the purpose of which was to contest the elec-

tion by virtue of which Mrs. Ferguson had been certified to the Secretary of State. In that petition he seeks a judgment of the District Court declaring that Mrs. Ferguson is ineligible to hold the office of governor, and asks relief, we assume under Revised Statutes, Arts. 2927 and 2929, which authorize the District Court to enjoin the placing of the name of an ineligible person on a ballot at a general election. He likewise seeks a contest of the election, and proposes to show that Mrs. Ferguson received many illegal votes at the election which should not be counted, and that if properly counted, he, the respondent R. S. Sterling, should be declared the nominee of the democratic party, and should be certified to the proper election officers as its nominee as provided by the election contest statutes.

At about 12:30 o'clock A. M. on September 28, 1932, there was presented to the Honorable W. F. Robertson, Judge of the 126th District Court, without notice to the relators in this cause, at the home of said Judge, in the City of Austin, an application for an injunction or injunctive order in the case above referred to. It is stated in relators pleading that Judge Robertson granted the injunction, effective until the further orders of his court, enjoining the relators Miriam A. Ferguson and James E. Ferguson, and the respondent Jane Y. McCallum, from certifying, publishing, posting, or printing or causing or aiding or directing the certifying, publishing, posting, or printing the name of Mrs. Ferguson as the democratic candidate for the office of governor upon the official ballot to be used, or which "is used at the general election in this State November 8, 1932," etc. Service of the injunctive order, as well as in the original case, was had on the relators on the evening of September 29, 1932, as we understand the record.

On September 29, 1932, the relators filed in the Supreme Court a motion for leave to file a petition for mandamus now before us. Upon the filing of this motion we set the same for argument on Saturday, October 1, 1932. Mrs. McCallum filed an answer, in which she stated that she had been advised by the Attorney General that in his opinion it was her duty to certify the names of the candidates for State offices to the various County Clerks of the State not later than October 1, 1932, but that in the meantime the injunction which we have just described and had been issued, and she had been restrained from certifying the name of Mrs. Ferguson as the nominee of the democratic party. She then said:

"Now she is advised that this Honorable Court has the matter in hand, and she deems it her duty to await and abide

the will and orders of this Court which may reconcile the differences, if she does or does not certify the name of Mrs. Miriam A. Ferguson, in obedience to the orders of this Court, and thus protect her by the orders of this Honorable Court, as she has no personal interest in the matter and no purpose to refuse to discharge her official duties when the Courts shall have advised her what such duties are."

Governor Sterling answered by plea of intervention filed in this Court, in which he pleaded that a contest of the election by which Mrs. Ferguson claimed to be the nominee of the democratic party had been filed by him in the District Court; and which we have heretofore described. He averred that the injunction previously mentioned herein was sued out for the purpose of protecting the jurisdiction of the District Court where his contest was pending. He averred that this Court, the Supreme Court, is without jurisdiction to issue a mandamus to compel the Secretary of State to certify Mrs. Ferguson as the nominee of the democratic party, because of the pending contest.

All parties to this proceeding appeared at the hearing by able counsel on last Saturday, and after full argument the motion for leave to file was submitted us for consideration.

Upon the foregoing facts, briefly stated from the record as it existed at the time of the argument, this Court had substantially completed its opinion when other events transpired which rendered the presentation of additional facts to this Court necessary. At the close of the submission of this case last Saturday we had announced from the bench that the pendency of this proceeding in the Supreme Court was not to be regarded as any cause for delaying the trial of the contest suit in Judge Robertson's court, unless and until we issued orders to that effect, and that the 126th District Court was at liberty to proceed. Judge Robertson did proceed with the trial of the contest case, and on the morning of October 5th, 1932, in quite an able opinion, held that the District Court had no jurisdiction of primary election contests involving the office of Governor, but that such contests, like those arising out of general elections, were confided to the exclusive jurisdiction of the Legislature. As will be shown later, we have not found ourselves able to agree with Judge Robertson's conclusion; but that he gave the parties to the contest a fair and patient hearing, and prepared and filed an opinion evidencing great learning, is not to be gainsaid. Upon that opinion Judge Robertson dismissed the contest in his court, dissolved the injunction theretofore issued by him, and

overruled the motion of the contestant to continue the injunction in effect pending an appeal. Governor Sterling as contestant excepted to the dismissal by Judge Robertson, and appealed the case to the Court of Civil Appeals at Austin. He filed what he terms a supersedeas bond for the purpose of superseding the judgment of dismissal of the trial court and the vacation of the injunction referred to above, but the supersedeas was not allowed by the court nor by the Court of Civil Appeals, and therefore did not suspend the judgment of dismissal nor reinstate the dissolved injunction. Upon the filing of the record from the District Court, in the Court of Civil Appeals, that Court has certified to us the single question:

"Did the trial court err in sustaining said plea and motion for want of jurisdiction in the court to hear and determine the contest and proceeding, and in entering the judgment of dismissal?"

■ Upon the filing of the certified question in this Court we consolidated that case with the mandamus case heretofore described, permitted the petition for mandamus to be filed, and took, as we were authorized to do, a summary submission of the two cases together, and at the close of this opinion will give directions to the respondent Secretary of State and answer the certified question with directions to the Court of Civil Appeals.

Relator denies that jurisdiction ever attached in the District Court of any contest in behalf of respondent Sterling of the nomination by the Democratic party of relator Mrs. Miriam A. Ferguson for the office of Governor of Texas, on the ground that respondent's petition challenging the primary election for fraud and illegality, though filed within ten days, was not filed within five days after the result of the primary had been declared.

In our opinion, the contest was inaugurated within the time required by the statutes.

■ Article 3146 gave the state democratic executive committee and the district court concurrent jurisdiction, and further gave the option to a contestant of the nomination for a state office, when the contest was "based on charges of fraud or illegality in the method of conducting the elections * * * or in issuing certificates of nomination" to maintain his contest either before the executive committee of the State or in the district court of the county, where the contestee resided.

■ Article 3148 required that "the complaining candidate" *if he desires to file a contest with the executive committee* shall,

within five days after the result has been declared by the committee or convention, cause notice to be served on the chairman or some member of the executive committee, in which he shall state specifically the ground of his contest." By its very terms article 3148 applies only if the complaining candidate elects to invoke the jurisdiction of the executive committee. If he does invoke the committee's jurisdiction, notice must also be served on the contestee not less than five days before the date set by the committee for the hearing, which must be within twenty days after the date of the convention "if special charges of fraud or illegality in the conduct of the election, etc., are made."

■ Either party is allowed to appeal, under article 3151, from the final decision of the executive committee to the district court where the contest must be tried *de novo*. The party appealing must file notice of appeal with the chairman of the executive committee within three days from the date of its decision, and must file all papers in the contest in the district court within ten days from the date of the decision. It thus appears that if the jurisdiction of the state committee be invoked and the contest be there decided, the losing party is still allowed ten more days to invoke the jurisdiction of the court.

Article 3152, as amended by Acts 1931, 42nd Legislature, p. 395, ch. 241, sec. 1, applies where the complaining candidate exercises his option to directly invoke the court's jurisdiction. In plain and simple language it fixes ten days after the issuance of the certificate of election by the convention chairman as the time for the filing of the contest in court. The exact language of the statute is: "In state * * * offices, the certificate of nomination isued by the president or chairman of the nominating convention, or chairman of the county executive committee, shall be subject to review upon allegations of fraud or illegality, by the district court of the county in which the contestee resides; provided that such allegations are filed in said court within ten days after the issuance of said certificate."

■ It is urged in behalf of relators that articles 3148 and 3151 require within five days that notice of the contest be given to the chairman or member of the executive committee in all cases where the contest raises questions of fraud or illegality in the conduct of the election, whether the suit be first brought in the committee or in the court. The complete answer to the contention is that notice within five days to anybody is not required save on condition that the complaining candidate elects to have a committee hearing. Another conclusive answer is that article

3152 expressly allows *ten days* after the issuance of the certificate for the filing of a contest in the district court based on "allegations of fraud or illegality." The words of articles 3146 to 3152 were originally embodied in one section, numbered 141, of the Acts of the 31st Legislature, 2nd Called Session, p. 452. The words "charges of fraud and illegality" in article 3146 and the words "allegations of fraud and illegality" in article 3152, must be given the same meaning, under thoroughly established and universally recognized canons of statutory construction. Article 3149, in expressly empowering either the executive committee or district court to examine the contents of the ballot boxes, "where fraud or illegality is charged to have been used" makes perfectly plain how broad a meaning is to be given to the terms fraud and illegality on which a primary contest is grounded. No denial is made of the meaning of the terms in article 3146, and the words cannot be reasonably interpreted as having a different signification in article 3152.

The rule which requires the same construction of the words of statutes, especially when originally used in the same section of the legislative act, was recently recognized by this Court in applying the primary election law, when the Court said: "Obviously the words 'state office' have the same meaning in article 3111 as in article 3102, dealing with the same subject matter of party nominations." Brown v. Darden, 121 Texas, 495, 50 S. W. (2d) 261.

15 Michie's Digest, at page 966, states the rule in Texas jurisprudence in these words: "Terms used under one section of a statute are to be construed with reference to the meaning given those terms in another section of the same statute."

In Warner Elevator Mfg. Co. v. Houston (Texas Civ. App.) 28 S. W., 405, the Court said:

"It is a familiar rule of statutory construction that when words that, by their use in one part of a statute, have a definite and fixed meaning, are used in a subsequent part of a statute, their fixed and definite meaning will attach to them. Words repeatedly used in a statute will have the same meaning throughout unless the contrary intention appears. Suth. St. Const., sec. 255, 262."

It follows that the jurisdiction of the District Court of Travis County did lawfully attach by the filing of respondent Sterling's contest within ten days after the issuance of the certificate of nomination for Governor by the State Democratic Convention, unless the Constitution deprives all the courts of jurisdiction to determine contests over primary election nomi-

nations for Governor and confers exclusive jurisdiction of such contests on the Legislature.

In our opinion the jurisdiction of the courts over contests for mere party primary nominations is not at this time fairly open to question.

The controversy in the case of Dickson v. Strickland, 114 Texas, 176, 265 S. W., 1012, which was erroneously regarded by the District Court as decisive, arose subsequent to the primary election, after Mrs. Miriam A. Ferguson had been duly nominated for Governor by the democratic primary. After deciding that the Legislature and not the courts were empowered to determine the right of a candidate for Governor to have his name printed on the official ballot in the general election, the opinion of the Court in Dickson v. Strickland explicitly stated:

"Moreover, the questions we are determining did not and could not arise under the facts of Ferguson v. Maddox, 114 Texas, 85, 263 S. W., 888. These questions relate entirely to a voter's right to invoke the jurisdiction sought to be conferred by Article 3084a on the District Court to prevent the name of a candidate for governor appearing on ballots in a *general* election. The whole controversy in Ferguson v. Maddox was over preventing the name of a candidate for governor from appearing on ballots at a *primary* election. *The only election governed by Section 3 of Article IV is the general election.* Koy v. Schneider, 110 Texas, 369.

"Speaking of primaries, the Supreme Court of the United States said in Newberry v. United States, 256 U. S., 250, 65 L. Ed., 913, as this court had said in substance in Koy v. Schneider, supra: 'They are in no sense elections for an office, but merely methods by which party adherents agree upon candidates whom they intend to offer and support for ultimate choice by all qualified voters.' " 114 Texas, 196.

In a subsequent case, the Supreme Court was called upon to exercise its jurisdiction in determining the right of a candidate for Governor to have his name appear not on general election ballots but on primary election ballots. The Court determined in an elaborate opinion that the candidate's suit to compel the placing of his name on the ballots in the democratic primary as a candidate for the nomination for Governor came within a class which the Legislature had *validly* put within the jurisdiction of the Supreme Court, and hence the motion to dismiss such writ for want of jurisdiction was overruled. Love v. Wilcox, 119 Texas, 266, 271, 28 S. W. (2d) 515.

The case of Ferguson v. Wilcox, 119 Texas, 282, 28 S. W.

(2d) 526, was one in which one of the relators in this suit invoked the jurisdiction of the Supreme Court to issue a mandamus to compel the State Democratic Executive Committee to certify to the county chairman his name as a candidate for the nomination for Governor in the democratic primary to be held in the year 1930. The State Executive Committee challenged the Court's jurisdiction by proper plea. The opinion states that the first question to be determined is: "Whether or not this Court has jurisdiction to hear and determine this controversy and grant the relief sought by the relator." Answering the question, the Court said:

"With reference to jurisdiction, the Supreme Court of this State, in the case of Love v. Wilcox et al., only last week, in a well considered opinion by Associate Justice Greenwood, held under similar jurisdictional facts that the Supreme Court did have jurisdiction. We have carefully examined and considered this opinion, and approve it, and therefore hold that we do have jurisdiction to hear and determine this controversy." 119 Texas, 286.

Last month, at the instance of the relator in this suit, the Supreme Court determined that it had complete jurisdiction of a suit for mandamus to compel the State Executive Committee to perform its statutory duties with reference to tabulation of votes in the democratic primary in the race for Governor. The writ was not issued for the single reason that the Committee had not breached any duty to relator. The Court's opinion not only recognized that the statutes were valid which conferred authority on the Court to adjudicate such a controversy but expressly treated and declared articles 3146 to 3152 as valid statutes, providing "for the contest of primary elections through the courts of the state." Ferguson v. Huggins, 122 Texas, 95, 52 S. W. (2d) 904.

Indeed relator's instant suit invokes a jurisdiction which does not exist and could not be exercised were it true that exclusive jurisdiction of all controversies arising over nominations by primaries was vested in the Legislature, as such exclusive jurisdiction is vested over controversies with respect to the general election.

■ The District Court being clothed with jurisdiction to entertain this contest possessed power to determine whether a temporary injunction was necessary for the maintainance of its jurisdiction, forbidding the Secretary of State to certify relator's name to the county clerks until the contest might be finally determined. The temporary injunction being supported

by jurisdiction of the District Court over the contest was not void—no matter how improvidently it may have been issued.

■ Article 3150 appears to rather plainly disclose a legislative intent that the Secretary of State should not certify while a contest was pending in a court of competent jurisdiction. For it provides that even if the State Executive Committee has tabulated and certified the votes and the State Convention has approved the same, and the new State Executive Committee has finally determined a contest in favor of a contestee, still his right to have his name certified is conditioned on no contest being pending in court. The language of the statute is that the apparently successful candidate is entitled to certification to the county clerks after *all above stated* has transpired "unless notice of appeal to the district court is given" and again, only "if such appeal is not perfected in the manner and time herein provided." Article 3152 follows article 3150 by providing that where the contest is originally brought in the proper court the name to be certified is not that of the man certified by convention and committees, but "the name of the candidate in whose favor said judgment shall be rendered."

■ When this proceeding was originally instituted there was still an undetermined contest in a court whose jurisdiction had attached, and that court had enjoined the Secretary of State from certifying relator's name to the county clerks. Under those circumstances the authorities in and out of Texas seem in general accord in declaring no mandamus could issue against the Secretary of State until the injunction was vacated by this Court or some other court of competent jurisdiction.

In Cleveland v. Ward, 116 Texas, 1, 285 S. W., 1063, 1074, this Court said: "The rule is, of course, an elementary one that mandamus will not lie to an inferior court where proceedings therein have been enjoined. Spelling on Extraordinary Relief, vol. 2, secs. 1403, 1402, 1378."

One of the articles referred to in that opinion states: "It is a familiar principle that mandamus does not lie to compel a party to violate an injunction; and the principle is as applicable where the writ is sought in a superior court as in other cases." Spelling on Extraordinary Relief, vol. 2, p. 1159, sec. 1402.

The last article approved in Cleveland v. Ward, supra, reads: "It is well settled that the extraordinary relief by mandamus will never be granted to compel the performance of an act which has been expressly forbidden by injunction. It is immaterial, in this respect, whether the injunction has been issued

by the same court to which the application for mandamus is made, or by another court of competent jurisdiction, or whether the performance of the act sought to be coerced by the mandamus in the mandamus proceeding would be in direct violation of an existing injunction, though the person seeking relief by mandamus is not a party to the injunction suit. A court will never, by this method, command the violation of the commands of another court of competent jurisdiction, where such violation would subject a party to punishment for a contempt of court, or put him in conflict with such a court; nor will the court in such cases inquire into the propriety of the injunction." Spelling on Extraordinary Relief, vol. 2, sec. 1378.

To the same effect see: 18 Ruling Case Law, 141; 38 Corpus Juris, 572, 573; Wilson v. Dearborn (Texas Civ. App.), 179 S. W., 1102; Mills v. Kispert, 21 Wis., 392; People v. Gilmer, 10 Ill., 247, 249; People ex rel Ives v. Circuit Judge for Muskegon County, 40 Mich., 63; State v. State Highway Commission, 312 Mo., 230, 279 S. W., 692.

Although we have decided that the District Court did have jurisdiction of the contested election case, it does not follow that the action of Judge Robertson in dismissing it and dissolving the injunction was erroneous, or that the Secretary of State should not certify the name of Mrs. Ferguson as the nominee of the democratic party for Governor of Texas. On the contrary, we think his dissolution of the injunction and the dismissal of the suit was correct, and that the Secretary of State should certify Mrs. Ferguson's nomination. Our reasons for these conclusions will now be stated.

■ We think the rule settled that the nominee of a political party who holds a certificate to that effect, such as Mrs. Ferguson holds, gives that nominee a certain definite standing, and endows him, or her, with a valuable right which may be enforced. As stated in Ruling Case Law, vol. 9, p. 1090, sec. 100:

"The necesary effect of the primary law, however, is to give an official character to a primary nominee. It may not be strictly accurate to call him a public officer, but the law gives him a certain and definite standing and endows him with at least one valuable privilege or right which he may enforce. Until the time of the election he is guaranteed, and in fact holds, a recognized legal position, which may be called, in default of a better term, a 'quasi office.' The giving of a certificate of election to a man who has received the necessary plurality at a primary election, upon the determination of that

fact by the proper board, is entirely logical, in fact just as logical as the giving of a certificate of election to a man who has received the majority of the votes for an ordinary office. His rights under it are not so valuable and last a shorter time, but they are substantial. *Therefore, where provision is made for the issuance of a nomination certificate, and one is issued, the holder is entitled to have his name printed on the official election ballot, at least until it is set aside in proper proceedings.*" (Italics ours).

We think that the holder of a certificate such as that held by Mrs. Ferguson is entitled to have his, or her, name printed on the official election ballot until the certificate is set aside by a proper proceeding, such as an election contest; provided that a contest filed in due time in a court of competent jurisdiction substitutes for such right that of having certified the name of the party adjudged entitled to the nomination. However, such substituted right can not exist after the contest becomes unavailing and moot from lapse of time.

In the case of Rinder v. Goff, 129 Wis., 668, 109 N. W., 628, 9 L. R. A. (N. S.), 916, where no statutes providing for certification by a court upon contest were shown to exist, the Supreme Court of Wisconsin, in discussing the legal effect of such a certificate, in part said:

"From this conclusion, it naturally follows that such a certificate must be given like effect, so far as the rights of a nominated candidate are concerned, as a certificate of election to an ordinary office. This court has held that one who has been declared by the proper canvassing board to have been elected to an office, and has received the proper certificate of election and duly qualified, is entitled to the possession of the office and its property and emoluments as against all the world except a defacto officer already in possession under color of authority; *and that this right persists until a different result is reached in a quo warranto action or other proper proceeding to contest the right of the certificate holder.* State ex rel Jones v. Oates, 86 Wis., 634, 39 Am. St. Rep., 912, 57 N. W., 296; State ex rel McCoale v. Kersten, 118 Wis., 287, 95 N. W., 120. If this principle be applied to the present cast,—and we see no reason why it should not be so applied,—it is decisive in favor of Rinder's right to have his name placed upon the ticket. No act of qualification is required of a candidate nominated at a primary election. *So, when the vote has been canvassed by the proper board, and he has received his certificate, he is at once in possession of his quasi office so far as anyone can be in pos-*

*session of it, and entitled to its single privilege, namely, the right to have his name put on the official ballot in the proper place, as against all the world, until in some proper action or proceeding to contest his right it is decided that another person was in fact nominated. \* \* \* His right must be contested and set aside in a proper action or proceeding brought for the purpose, and, until this has been done, mandamus will not lie to place him in possession of the property and privileges of the office to which he has prima facie title."* (Italics ours).

Withey v. Board of Canvassers, 194 Mich., 564, 161 N. W., 781, and Fuller v. Corey, 18 Idaho, 558, 110 Pac., 1035, are to the same effect.

■ Since under the authorities Mrs. Ferguson, by virtue of the certificate of nomination, after the contest suit has become moot, has the right to have her name placed on the official ballot, the inquiry becomes pertinent as to what this right necessarily embraces. We think it embraces the right to have at least substantial performance of the duties prescribed for public officers relative to the election, among which we may say is the right to be certified by the Secretary of State to the county clerks of the various counties at such time as that the statutes may be at least substantially followed relative to the preparation, printing, and distribution of ballots in an orderly way; the posting of her name as a candidate by the county clerks and the preparation and distribution of the official ballots with her name thereon within the statutory time for the distribution of the ballots not only for election day, but for absentee voting.

Article 206 of the Penal Code provides:

"The county clerk of each county shall post in a conspicuous place in his office for the inspection and information of the public the names of all candidates that have been lawfully certified to him to be printed on the official ballot for at least ten days before he orders the same to be printed on said ballot, and he shall order all the names of the candidates so certified printed on the ballot as provided by law and in case the county clerk refuses or wilfully neglects to comply with this requirement he shall be fined not less than two hundred nor more than five hundred dollars."

Article 2956, as amended by the Acts of 1931, 42d Legislature, p. 180, chap. 104, relates to absentee voting. The statute is too long to quote in full in this opinion. It provides the time in which and the method by which absentee votes may be cast. It declares that:

"At some time, not more than twenty (20) days nor less than three (3) days, prior to the date of such election, such elector shall make his or her personal appearance before the Clerk of the county of his or her residence and shall deliver to such Clerk his or her poll tax receipt or exemption certificate entitling him or her to vote at such election, and said Clerk shall deliver to such elector one ballot which has been prepared in accordance with the law for use in such election, which shall then and there be marked by said elector apart and without the asisstance or suggestion of any person," etc. * * * "Or, at some time not more than twenty (20) days prior to the date of such election, such elector shall make his or her written application to the County Clerk of his or her County requesting a ballot, and shall send together with said application his or her poll tax receipt or exemption certificate, but in the event said elector does not have his or her receipt or certificate, the County Clerk is directed to procure from the Tax Collector a certificate in lieu of said receipts or exemption certificate. Such county clerk receiving the application for a ballot, after verification shall mail a ballot to such elector, which ballot having been prepared in accordance with the law for use in such election." * * *

By the terms of Article 2992 the county judge, county clerk, and sheriff are constituted a board whose duty it is to provide the supplies necessary for the conduct of an election and deliver them to the proper election officers, etc. It is to be observed that it becomes the duty of this board, at the expense of the county, to provide the election supplies and the ballots to be used in voting, *and the duty of the county clerk is that he is expected to have these ballots in hand, in order that absentee voting may begin, or the absentee ballots obtained by the voters in accordance with law.* Attention is directed to the fact that the county clerk is compelled to post in a conspicuous place in his office, for the inspection and information of the public, the names of all candidates that have been lawfully certified to him to be printed on the official ballot, for *"at least ten days before he orders the same to be printed on said ballot."* A willful failure on the part of the clerk to comply with this statute is punishable by a fine of not less than $200 nor more than $500. A willful failure of the members of the board created by Article 2992 to provide the election supplies is likewise made a criminal offense punishable under the general provisions of Article 230 of the Penal Code, which declares:

"Any judge, clerk, chairman or member of an executive committee, collector of taxes, county clerk, sheriff, county judge

or judge of an election, president or member of a State Convention, or Secretary of State, who willfully fails or refuses to discharge any duty imposed on him under the law, shall be fined not to exceed five hundred dollars, unless the particular act under some other law is made a felony."

It is obvious, also, that this provision of the Penal Code imposes upon the county clerks of the State the penalty last named for a willful failure to supply voters with absentee ballots. Moreover, for a willful failure to certify the names of the nominees of the party as filed with the Secretary of State, that officer is punishable by a fine not exceeding $500, as specified in the Article of the Penal Code just quoted. That Article expressly declares that the "Secretary of State who willfully fails or refuses to discharge any duty imposed on him under the law," etc., shall be fined in the amount specified.

■ Since the county clerks cannot post the names of candidates lawfully certified to them as provided in the Penal Code, Art. 206, until the names of State candidates have been certified to them by the Secretary of State, it follows that the certificate of the Secretary of State containing the names of State candidates must reach the county clerks in time for those officers to substantially perform their statutory duty and post the list of certified names before they order the ballots printed. The performance of this duty by the Secretary of State is assured, as we have previously stated, by making the willful failure to perform it punishable as a crime. It is clear, we think, that these statutes are mandatory, in the sense that the candidate and the citizen have rights to be subserved thereby, which may be enforced, and that the statutes should be obeyed.

The object of the statute requiring the posting of the candidate's names by the county clerk is to give the public the names of the candidates so that their fitness may be investigated and considered. The posting is also for the purpose of enabling the candidates to ascertain if their names have been received and listed correctly and under the proper political party heading, etc. In the nature of things this is a very important right, and from a failure to observe it, or from having observed it, very important effects may follow. Allen v. Glynn, 17 Colo., 338, 15 L. R. A., 744.

While we have said that these statutes with reference to certification by the Secretary of State, posting by the county clerk, and the supplying of ballots twenty days before the election for absentee voters, are mandatory before the election, and obedience thereto may be enforced, it does not follow that fail-

ure to follow them would result in a void election. We say this in order that our statement of the previous rule may not be misunderstood. After an election, most election statutes are to be regarded in a somewhat different light. Ordinarily after an election the inquiry is one as to whether or not there has been a free and untrammeled vote and a correct record made; and if so, the courts are prone to sustain the result of the election. 9 Ruling Case Law, p. 1091, Sec. 101. However, before the election these statutes, the object and purpose of which has been briefly refererd to, are statutes which the public officers should obey, and which they may ordinarily be required to obey by proper proceedings.

■ The existence of these statutes does not, of course, prevent the contest of an election as provided for in Articles 3146 to 3152 of the Revised Statutes where the office is one within the jurisdiction of the agency invoked, but they do mean that such an election contest becomes moot, and the issues no longer justiciable when the time comes that a final judgment adjudging the validity or invalidity of the election certificate cannot be heard in time for the certificate of the Secretary of State to reach the county clerks of the various counties of the State in time for at least substantial performance of the duties prescribed by law for the protection of valuable rights granted nominees and voters. When that time arrives the contest case is moot and should be dismissed.

The original intendments of the statutes relating to contests of primary elections no doubt contemplated that ample time should intervene between the holding of the election and the performance of the statutory duties by the officers above referred to.

The contested election statutes were enacted in 1905 as part of the general election laws of the State. They were amended in 1909. At the time of their original enactment and when amended only one primary was to be held,—that in July, and the candidate who received a *plurality* of the votes became the nominee. There then existed, of course, between the declaration of the result of the statutory primary election in July and, say, the first of October, approximately two and one-half months,—ample time for the orderly and complete determination by the courts of contested election cases. However, in 1918 the Legislature declared that nominations for State officers of a political party should be by a *majority vote, and provided for a second primary, set four weeks later than the first,* —or in the latter part of August of each year. This, of course,

took from the period within which a contest might be had some four weeks' time available under the previously existing law. Later on the absentee voting statute was enacted, which was amended in 1931 so that the election officers were compelled to have the ballots ready at least twenty days before the election, in order that voting might begin. The statute with reference to ten days' posting before the printing of the ballots was ordered still obtained. The absentee voting statute, therefore, took from the original time contemplated when the contest statutes were first enacted some twenty days more. On the whole, it is plain that the time contemplated by the Legislature when the contested election statutes were first enacted has been very materially shortened by the second primary Act and the absentee voting statute. But the time remaining is not so short as that we can say that by the subsequent modifications of the original Act with reference to a second primary and absentee voting the Legislature intended to make any less binding or effective the penal provisions of the Code with reference to the posting of nominees' names by the county clerk ten days before ordering ballots printed; nor those of Article 2956 as amended with reference to absentee voting; nor say that it was intended that the candidate should be any the less entitled to benefits of the substantial performance of the pre-election duties stated in the statute, nor the public the less entitled to the performance of these duties in an orderly and proper conduct of its elections.

The Attorney General of the State, in an opinion dated September 20, 1932, and addressed to Mrs. McCallum as Secretary of State, in answer to an inquiry made by her with reference to her duties as to when she should certify the names of nominees to the county clerks of the State, in part said:

"Since the general election is to be held this year on November 8th, and since there seems to be no reason why the certificate of the Secretary of State cannot be made at the present time, it is the writer's opinion, and you are so advised, that you should certify the names of the nominees for state office to the several county clerks of this state at the same time you make your certificate of nominees for district office, which is not later than October first, or at least within sufficient time to permit the county clerks of this state to perform their statutory duties as herein discussed, taking into consideration a reasonable time for the transmission of your certificate and the preparation by the county clerks of the ballot form and the time necessary to have said ballots printed, in addition to the time required for

the posting of the names to be printed on said ballot, and keeping in mind the fact that the ballots must be prepared so as to permit absentee voting twenty days before election day."

This conclusion of the Attorney General seems to be in fair accord with our own conception of the law.

■ The courts generally follow the rule that where no date when the authority of a court or other body for exercising a special jurisdiction shall cease, then that it does cease when any judgment which might be entered by the court would become moot,—that is to say, when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law. Hill v. Superior Court, 109 Cal. App., 91, 292 Pac., 662; Ford v. Beckwith, 28 Colo., 95, 62 Pac., 843; Pollard v. Speer, 207 S. W., 620.

The case of Hill v. Superior Court, 292 Pac., 662, illustrates the proper application of the rule. The court in that case had before it a contested election case under the statutes of the State of California. The statute in that instance provided that the contest should be finished *"in time to print the ballots for the final election."* In that case, as in this, there was a provision of law which required the Secretary of State to certify the nominees to the county clerk or registrar of voters of that State. The District Court of Appeals of the Second District of California concluded that the compilation of a list of certified nominees by the Secretary of State and its certification to the county officers by him in time to have the ballots printed, etc., could not be had before the determination of the contest proceedings, and granted a writ of prohibition prohibiting the continuance of the trial, on the ground that the question to be determined was then "already moot." In part the court said:

"In considering the nature of the provisions of this law as being mandatory or directory, we are bound to take into account further requirements as to preparation for the ballot by the secretary of state. These make it clear that the requirement that the contest be finished 'in time to print the ballots for the final election' is mandatory. This is so because the secretary of state must 'make such changes in the record in his office as such judgment or judgments require,' must 'not later than the twenty-fifth day after any primary election compile the returns,' and also certify the revised compilation showing the name of every person who has received the nomination to the county clerk or registrar of voters, not less than thirty days before the November election. Sections 21, 22, 23, Ibid.

"Taking judicial notice of the statutes and of the dates of election, it becomes apparent that the compilation of the secretary of state will have been certified prior to any possible determination of judicial proceedings in this instance. No action of the superior court could avail anything, and would only determine a question already moot."

In the case of Ford v. Beckwith, supra, the Supreme Court of Colorado declared:

"This is a contest arising under the Australian ballot act. Only nine days before the general election our discretion is invoked to review the proceedings below. Important questions are raised as to the meaning of several provisions of the act. The district court sustained the ruling of the secretary of state, in which he held that the nominees against whom petitioners filed protests were entitled to have their names printed upon the official ballot. The questions are important, and there is necessity for speedy action, if relief is afforded at all. We ought not to assume jurisdiction and undertake to decide such difficult questions without ample time for examination. Under the requirements of the law pertaining to the duty of the secretary of state, he should send to the county clerks of the representative district concerned the certificates of nominations not later than the day when this application was filed. It is needless to state that we cannot satisfactorily dispose of the cause so expeditiously. We therefore must deny the petitioners' application to review the judgment, and the petition must be dismissed."

A candid and fair consideration of Governor Sterling's contest case can lead, we think, to but one conclusion,—namely, that the case is moot; that the relief which he seeks could not, even if on the facts he should be entitled thereto, be determined by a final judgment in time for certification to the county clerks to post his name as a nominee before the ballots are ordered printed, and the printing of the ballots and their distribution to absentee voters before the election on November 8, 1932. Judge Robertson dismissed his case on October 5, 1932. Absentee ballots should be in the hands of the county clerks of the counties of the State by the 17th day of October. The ballots should not be printed until the names of the candidates have been posted by clerks as required by law. Some time must necessarily be allowed for certification to the county clerks and the printing of the ballots. From the day of dismissal by Judge Robertson until November 8th, the election day, but thirty-three days remained. It is idle to say, we think, that the case pend-

ing in Judge Robertson's court, the largest contested election case in the history of this State, involving an attack on the legality of approximately fifty thousand ballots, according to Governor Sterling's petition, and about the same number put in issue by the contestee, Mrs. Ferguson, could be tried and a final judgment entered and certified in time for the statutes to which we have previously referred to be followed.

■ The intervention pleading of Governor Sterling in the mandamus case in this Court shows the magnitude of the case before Judge Robertson. In that pleading Governor Sterling alleged:

"But intervener further averred in said contest and proposed to prove that many votes were cast for Mrs. Miriam A. Ferguson in Texas and counted for her that were illegal, some because the ballots had not been signed by the officers holding the election, others because the voters were non-residents and not citizens of Texas, others because they had not paid their poll tax although within the age requiring the poll taxes to be paid and not exempt by the Statute for any cause, and in many precincts and counties there were entire boxes where no polling lists were furnished and no tax rolls were furnished to the officers holding the election from which they could determine who were qualified voters in the several precincts and who were not qualified voters. Intervener in his contest petition filed in the District Court, as aforesaid, set out in detail all of this information showing that approximately 50,000 illegal votes had been cast and counted for Mrs. Miriam A. Ferguson, they being illegal for causes other than her ineligibility to hold the office; *that all of these facts intervener proposes to prove in that case.*" (Italics ours).

The petition of Governor Sterling, filed in the District Court, with its exhibits, consists of more than 1,600 pages of typewritten matter, with approximately fifty thousand alleged illegal votes listed by the names of the voters. It is obvious from the quotation from Governor Sterling's pleading in the mandamus case before us that proof of the facts as to these votes depends to a very large extent on oral testimony and the opening of ballot boxes and the examination of ballots. As a matter of common sense, we know the case could not be tried by Judge Robertson and a final decree entered in time for a substantial compliance with the pre-election statutes of this State.

We regard as unassailably sound the views upon this sub-

ject, expressed in the concurring opinion of Chief Justice McCulloch of the Supreme Court of Arkansas, where he said:

"When this action was commenced, it was obviously too late for Mr. Brundidge to secure a hearing and have his nomination certified during the time provided by the statute. His opportunity to become the nominee for Governor had passed away, and he does not claim in his pleadings the right to be certified as the nominee of the party. He seeks merely to prevent the certification of his opponent. In my opinion, when this point was reached, his right to question the validity of the nomination had ceased, and that he is not now in possession of any rights which a court of equity should protect.

"It is suggested that he could be a candidate without having his name certified as a nominee, that the nomination by the Democratic party is a substantial thing, and that he should have the right to prevent his opponent from having that advantage in the election which is to follow. It is true that the statute provides that blank spaces shall be left on the ticket so that the voters may write the name of any person on the ticket. This does not, however, give any legal right to a candidate for office. It is a mere provision of the law for the benefit of voters, and the only legal rights conferred by the statutes of this State upon a candidate is one who is a nominee either by a political party or by petition of electors. Now that Mr. Brundidge has lost the nomination on account of the acts of the committee and the lapse of time for hearing his contest, his rights are only those which are held in common by other voters of the State, and it cannot be contended that those common rights are such as a court of equity should protect. For these reasons, I concur in the judgment of the court reversing the case." Walls v. Brundidge, 109 Ark., 250, 160 S. W., 230, Ann. Cas., 1915C, p. 989.

The trial court trying an election contest is impotent to grant substantial relief once the time passes for the name of the contestant or certificate holder to be certified to the local election officers and to be placed on the official ballot. To preserve the status quo the court would be compelled to enjoin the holding of the election until the case was disposed of. This a court can not do. A general election must be held on the statutory date, and neither that nor any duty with reference thereto prescribed by a valid law to bring about the election can be enjoined. So, in the very nature of things, an injunction, the effect of which is to prevent the certification of Mrs. Ferguson's name after the time arrives when it must be cer-

tified, in order to be posted and placed on the ballot as provided by law, not only does not preserve the subject matter, but destroys the right of the certified nominee and grants no right of value to the contestant. Such an injunction no court has power to issue, except after final trial on the merits. Commonwealth v. Combs, 120 Ky., 368, 86 S. W., 697, 701; Weaver v. Tomey, 107 Ky., 419, 54 S. W., 732; High on Injunctions (4th Ed.), Vol. 1, Secs. 4, 5, 5a.

So, looking at the proceedings before us, the contested election is moot with reference to any right which might be adjudicated in favor of Governor Sterling, and to continue its trial as against Mrs. Ferguson, with an injunction against the certification of her name as the holder of the certificate of nomination, would deprive her of the right evidenced by that certificate, which cannot be done by any court decree except a final one entered after trial.

We answer the question certified by the Court of Civil Appeals that Judge Robertson's reason for dismissing the suit in the District Court was erroneous, but that his judgment dismissing it was the correct judgment and should be at once affirmed by that court. Its judgment of affirmance should be summary and the mandate issue at once upon the receipt of the answer of this Court to the question.

█ Since the judgment of Judge Robertson dismissing the respondent's contested election suit was a valid judgment, and has not been superseded, there exists no impediment to the certification of Mrs. Ferguson's name as the democratic nominee to the various county clerks of the State by Mrs. McCallum, Secretary of the State, and the mandamus will be awarded.

Immediately upon the receipt of the decree of this Court she is directed to so certify Mrs. Ferguson's name as the democratic nominee to the various county clerks of the State by telegram, provided the relators will pay the cost of such telegrams, and in any event by the usual written certificate. It shall be the duty of the various county clerks of the State immediately on receipt of said telegrams, or written certificates, if they do not receive the telegraphic notice, to post Mrs. Ferguson's name as the democratic nominee for Governor as provided by law, and they, with the other election officers, to otherwise follow the statutes just as though her name had been certified by the Secretary of State in the first instance.

Immediately on the filing of this opinion the Clerk of this Court is directed to issue the mandate and certificate to the

Court of Civil Appeals and the mandamus to the Secretary of State.

■ This is a summary proceeding under the statutes, the judgment is final from its rendition, and motions for new trial will not be filed nor considered.

Because of the comparatively short time permitted us for the consideration of the cases, we have found it necessary to make the actual preparation of this opinion the joint work of the Judges, as will be indicated by our signatures hereto. Certified question answered and ordered certified, and mandamus awarded.

> C. M. CURETON, Chief Justice,
> THOS. B. GREENWOOD, Associate Justice,
> WILLIAM PIERSON, Associate Justice.