SIMS et al. v. UNIVERSITY INTER-
SCHOLASTIC LEAGUE et al.

No. 3324.

Court of Civil Appeals of Texas.
Beaumont.

Dec. 4, 1937.

Rehearing Denied Dec. 29, 1937.

Gunter & Watson, of Port Arthur, and Chas. S. Pipkin, of Beaumont, for appellants.

M. L. Lefler, E. B. Votaw, and I. W. Lawhon, all of Beaumont, and Reid & Strickland, of Goose Creek, for appellees.

WALKER, Chief Justice.

Appellants, plaintiffs below, are Port Arthur Independent School District and its Board of Trustees, Thomas Jefferson Senior High School, its principal, Arvin N. Donner, its faculty, and all pupils attending this school, minors, and certain boys, minors under nineteen years of age, their names being alleged, who are playing football for Thomas Jefferson Senior High School, pupils in the twelfth, eleventh, tenth, and ninth grades; the minors appear by their next friend, G. M. Sims, Superintendent of the Schools of Port Arthur Independent School District.

Appellees, defendants below, are the University Interscholastic League, hereinafter referred to as the League, its State Executive Committee and its chairman, the District Executive Committee of District 14 of the League, and its members, named individually, and the principals of 6,200 schools in Texas, described as being "too numerous to mention," sued as members of the League. The appeal was regularly prosecuted from the judgment of the lower court, rendered on the 30th day of October, sustaining a general demurrer to appellants' petition, and dismissing their cause of action.

For cause of action appellants alleged that the League is organized annually under the auspices of the Extension Division of the University of Texas, and in its organization adopts annually a Constitution and Rules, hereinafter referred to as the "rules,"

by which the League and its members are governed in their League activities. The rules were made a part of the petition, and the following provisions thereof were specially pleaded:

(a) "The object of the League is to foster among the public schools of Texas inter-school competition as an aid in the preparation for citizenship."

(b) "Any public white school in Texas that is below collegiate rank and that is under the jurisdiction of, and receives apportionment from, the State Department of Education is eligible to membership in this League; except schools for defectives and corrective institutions." The member-schools are required to pay a membership fee for each current year; "In a city system of schools, each high school, each junior high school, and each ward or elementary school where the latter is under a separate principal, and is in a separate building from the high school and comprises the first seven grades or any subdivision thereof, shall constitute a separate member of the League and shall pay a separate membership fee. No pupils in one such school unit shall represent another in any contest."

(c) "The officers of this League shall consist of a State Executive Committee, an executive committee for each region, for each district, and for each county." The State Executive Committee is appointed by the president of the University; its duties are to have administrative charge of the affairs of the League, to co-operate with county, district, and regional officers, provided for by the constitution, "and to decide disputes that are appealed to it from such committees, except the selection and decisions of judges, and excepting disputes in intra-district football contests. It shall be the duty of the State Executive Committee to furnish official interpretation of rules of the League when the language of the same seems obscure." This committee has the power to amend the rules, under certain restrictions, and only this committee is given this power to amend.

(d) A "high school" is defined as one in which at least the time of two teachers, or their equivalent, is devoted to instruction above the seventh grade; in a school system of twelve grades, this refers to instruction above the eighth grade. A "Class A" high school is also defined.

(e) The rules provide for many contests among the member-schools, both scholastic and athletic, and prescribe the following eligibility rules, material to this appeal:

"Sec. 7. *Four-Year Rule.*—No one shall take part in any athletic contest in this League who has represented his school in any athletic contest, or contests, for four years. Participation prior to promotion to the eighth grade shall not count on the maximum of four years allowed under this rule. In a system of 12 grades this refers to participation prior to promotion to the *ninth grade.*"

"Sec. 15. *Teachers Ineligible.*—A person who is teaching whole or part time is ineligible for any League contest."

"Sec. 17. *Eight Semester Rule.*—No pupil who has been in attendance in high school for eight semesters or more shall be eligible for participation in any Interscholastic League contest."

(f) All disputes among the members of the League may be appealed to the State Executive Committee for adjudication, "except that the decision of district football committees in all disputes arising in connection with the determination of the district championship shall be final."

(g) The rules provide a special code to govern football, designated as the "Football Plan," from which we quote as follows:

"1. *Eligible Schools.*—No school shall participate in League football unless: Its acceptance of this plan is on file in the State Office by September 15."

"3. *Conferences.*—Participating schools shall be divided into conferences as follows:

"a. A high school (except a junior high school) with an enrollment of 500 or more last year shall compete in 'Conference A.' "

"4. *Districts.*—The State shall be divided into sixteen districts for Conference A, and competition shall include a State championship."

"6. *Duties of District Executive Committee.*—It shall be the duty of the District Executive Committee:

"a. To enforce all rules and regulations, to settle all disputes and all questions of eligibility arising inside the district. There shall be no appeal from any decision rendered by this committee.

"b. To certify to the State Office an eligible district champion not later than Saturday after Thanksgiving. In case of

dispute, certification to the State Office shall be in the form of a written notice naming the eligible school and must be signed by a majority of the members of the District Executive Committee." .

"25. *School Authorities Responsible.*— Responsibility for the proper conduct of football in a school system shall rest with the superintendent. All contracts and arrangements for games shall be made between superintendents, principals or other duly authorized members of the faculties of the respective schools involved. The control and management of all games shall be under the supervision of school authorities.

"26. *Trophy for State Champion.*—A regulation-sized silver football will be awarded to the school that wins the State championship under this plan."

"Appendix III."

"*Sec.* 17, *Eight-Semester Rule.*—A pupil becomes a high-school student only when he enrolls for three or more high-school subjects. In a system of eleven or fewer grades this refers to enrollment in the eighth grade; in a system of twelve grades it refers to enrollment in the ninth grade."

(h) The champion football teams, certified to the state office by the sixteen district Executive Committees, provided for by rule 4 of the Football Plan, meet and, under the direction of the state office, play among themselves for the state championship, the winner being declared state champion; no team can play in this contest except a certified district champion.

Appellants alleged further: (1) That District 14 of the League, organized under the Football Plan, with its executive committee in active performance of its duties, consisted of the following high schools: (a) Thomas Jefferson Senior High School of Port Arthur within the Port Arthur Independent School District; (b) Beaumont High School in the city of Beaumont; (c) South Park High School in the city of Beaumont, these three schools being in Jefferson county; (d) Orange High School in the city of Orange, Orange county; (e) Goose Creek High School in the city of Goose Creek, Harris county; and (f) Ball High School of Galveston, Galveston county; that these six schools are Class A schools; and that District 14 is a Class A district. (2) That on the 23d day of April, 1937, the District Committee of District 14 met in regular session and adopted the following resolution: "Moved that, in selecting the team to represent District 14 of the University Interscholastic League in inter-district games, the team be selected from schools requiring the application of the 8-semester rule beginning with the 8th grade." And that the committee adopted this resolution with the intent to make it a rule regulating the playing of football in District 14 for the football season of 1937–1938, and to enforce the rule in certifying the district football champion. (3) That Thomas Jefferson Senior High School, a Class A high school, is a member of the League and of District 14 of the League, and is in good standing with the State Executive Committee and entitled to all the rights and privileges of the League, and to participate in all League contests including the playing of football, and to contest for the district championship in football, under the rules, and, if the champion, under the rules to be certified to the state office as such champion, and that this certificate would entitle Thomas Jefferson Senior High School to enter the state contest for the state championship and to participate in the gate receipts of the state contest; that Port Arthur Independent School District is a school of twelve grades, and as such has the rights granted twelve-grade schools by the rules. (4) That the rules were regularly adopted, effective about September 15, 1937, and govern the playing of football for the 1937–1938 football season; that A. N. Donner, principal of the Thomas Jefferson Senior High School, attended the meeting of the League, meeting with the other member-schools, wherein the rules were adopted; and that he attended this meeting as the representative of appellants and as their representative made for them with the other member-schools the contract evidenced by the rules. (5) That, under the Constitution and Rules of the League, the District Executive Committee of District No. 14 has no rule making power and, in adopting the resolution complained of, as copied above, it exceeded its power under the rules, and that the resolution was null and void and the district committee was without power to enforce it; that though the resolution was void the district committee was threatening to enforce it, and if not prevented by an order of court would enforce it against Thomas Jefferson Senior High School, thereby depriving it of the right to contest for the championship of District 14 and, if

successful, of the right to be certified to the state office of the League as such district champion. (6) Appellants alleged facts giving Thomas Jefferson Senior High School the right to contest in playing football with the other high schools composing the Fourteenth District and, if the winner of the district championship, the right to be certified as such to the state office of the League, and to contend with the other district champions for the state championship. (7) If the resolution in issue is enforced against it, appellants alleged that they would be deprived of the benefits provided for in the rules of the League—the right to join with the other members of District 14 in fostering inter-school competitions as an aid in the preparation of its students for citizenship, as such competition relates to football and to the boys of the twelfth grade who play football and, if denied the right to enter the state championship contest, Thomas Jefferson Senior High School would be denied the right to participate in the gate receipts of the state contest, thereby causing it to lose $20,000 "in cold, hard cash."

The prayer was for a temporary injunction, restraining the Executive Committee of District 14 from enforcing against Thomas Jefferson Senior High School the resolution complained of, and, on final hearing, that the injunction be made permanent. Appellees answered by pleas in abatement, and by general and special demurrers, raising against appellants' petition the issues of want of parties, the failure to state a breach of right granted them under the rules, and the failure to allege facts giving the district court jurisdiction to grant the relief prayed for; they also pleaded general denial. The general demurrer was sustained, and appellants cause of action dismissed.

The resolution in issue took from Thomas Jefferson Senior High School the right to play its twelfth grade boys in League football, a right granted it by the rules of the League. By their petition appellants pleaded that they were injured by the resolution, and prayed for judicial relief. The general demurrer challenged the petition in the respects stated above.

We do not have before us the proposition of misjoinder of parties, nor of the want of other necessary parties, but only the power and right of the parties named as plaintiffs to prosecute the suit, and of the parties named as defendants to defend it; so, we shall examine the petition only to ascertain whether a plaintiff is named with legal capacity to prosecute the suit, and a defendant with legal capacity to defend it.

■ Public white schools in Texas, below collegiate rank, constitute the membership of the League. By the express language of the rules of the League, the term "school" does not refer to the "school building," as appellees suggest, but to the teachers, officers, and pupils who make up and constitute the school, and who use the building only as a place to do their work. Each separate school, functioning in a separate, independent building, has the right to join the League, and to appear in its meetings through its principal, and participate in its organization and in making its rules. Thomas Jefferson Senior High School was a member of the League, not the high school building, but the faculty, officers, and pupils, functioning through their school name; as such, they were named as plaintiffs in the petition, both by their school name and by naming as plaintiffs the principal, superintendent, teachers, and pupils—suing as a class. That the teachers and officers were sui juris and had the right to appear as plaintiffs, appellees concede. But they deny that the pupils, being minors, had the right to enter the League on a contractual basis, or to appear as plaintiffs to protect any right given them by the rules. This contention is overruled. The contract was for the benefit of the pupils—minors—made for them by their principal. If by his act they acquired a valuable right, they could enforce it under the principles of Third Party Contracts. Breaux v. Banker, Tex.Civ. App., 107 S.W.2d 382. But the contract of a minor, in person or by agent, is void only at his election. The other party to the contract cannot avoid his obligations on the ground that he had contracted with a minor. 23 Tex.Jur. 71. In contracting with the other member-schools for the organization of the League, Principal Donner was acting as the agent of that body of citizens constituting Thomas Jefferson Senior High School, and his act vested them with all rights granted by the rules (the contract); if these rights were justiciable, they (pupils, teachers, and officers) had the right to appeal to the courts for protection in the enjoyment of these rights.

■ We do not inquire into the right of Thomas Jefferson Senior High School to sue in its school name, because, as in actions by a partnership, every member of Thomas Jefferson Senior High School was

named as a party plaintiff; the officers and teachers, being sui juris, were plaintiffs in their own name; the pupils, through their next friend, Superintendent Sims. His right to appear in that capacity cannot be challenged by a general demurrer.

On the issue of parties defendant: The resolution was adopted by the district executive committee, in the exercise of a power claimed by it under the rules of the League; by these rules it was a creature of the League, composed of members sui juris. If the adoption of the resolution was a wrongful act, that is, if in adopting it the committee acted without power, appellants had the right to ask judicial relief, provided the wrong was justiciable, and the committee and its members were "persons" who could be made subject to the jurisdiction of the court. And why were they not such "persons"? Whether or not they could be sued as the "District Executive Committee" is an immaterial inquiry; the committee was named as a party defendant, but its individual members were sued with it, individually and as constituting the committee, and as such it was alleged that they adopted the resolution. The committee and its members were "persons," capable of discharging the duties committed to them by the rules of the League, and legally responsible to all parties injured by them by an abuse of that power; therefore, they constituted "persons" of whom the court could take jurisdiction. The committee and its members as described in appellants' petition were analogous to a partnership, and could be made parties defendant under the rules of law governing actions against partnerships.

The League and its officers and members were neither necessary nor proper parties. They did not adopt the resolution, and had no power to control the District Executive Committee in its adoption or recision, nor did they have the power to abrogate, rescind, or modify it in any respect. As the rules of the League did not give them this power, the courts are without power to confer it upon them; under the allegations of their petition, appellants were not entitled to any kind of relief against them.

The petition named necessary parties, plaintiff and defendant, capable of suing and being sued, and was not subject to the general demurrer on this ground.

To make their petition good as against the general demurrer, it was also necessary for appellants to bring it within the proposition that, before a member can sue his association or one of its agencies, he should "generally exhaust his remedies within the association." 7 C.J.S. 81, 82, Associations; 5 Tex.Jur. 142. This proposition of law did not require appellants to resort to the League and its executive committee, for by the express language of the rules they had no power of review over the District Executive Committee; but the allegation was made that all League remedies had been exhausted.

For a second reason appellants had the right to apply for judicial relief; the general rule, announced by the authorities cited above, is subject to the qualification that the act complained of "must have been in accord with the association's regulations." See authorities cited, supra. The aggrieved party may appeal directly to the courts where his associates acted without jurisdiction. Under the rules the powers of the District Executive Committee are strictly limited and defined. It is not vested with a general delegation of authority over football, but it is a creature of the League rules, strictly limited in its authority. It has no power except that given it expressly by the rules. Before it can act, it is compelled to look to a specific grant of power; unless it finds that power in the rules it cannot act. In this respect its power is analogous to the power of our cities and towns, prior to the adoption of section 5 of article 11 of our State Constitution (the Home Rule Amendment); defining this power in Le Gois v. State, 80 Tex.Cr.R. 356, 190 S.W. 724, 725, the Court of Criminal Appeals said: "The contention that we must look to the laws passed by the Legislature for all power for a city to act cannot be sustained since the adoption of section 5 of article 11 of the Constitution. That was the rule prior to the adoption of this provision of the Constitution—that a city must be able specifically to point out the authority to act in the grant given it by the Legislature; otherwise it was powerless to act." On this ground the resolution was void; the committee was without power to adopt it.

Again, the committee had no power to define the rights of a member-school, nor to add to or take from the qualifications of the school, as defined in the

rules, nor to amend the rules; the power to amend was vested in the Executive Committee of the League. The resolution violated the rules in all these respects. By section 1 of article 7 of the rules it is provided that a high school of eleven grades is one where the time of the teachers is devoted to instruction above the seventh grade, and a high school of twelve grades is one where the time of the teachers is devoted to instruction above the eighth grade. Section 7 of article 8 provides: "No one shall take part in any athletic contest in this League who has represented his school in any athletic contest, or contests, for four years. Participation prior to promotion to the eighth grade shall not count on the maximum of four years allowed under this rule. In a system of 12 grades this refers to participation prior to promotion to the ninth grade." See, also, the "Eight-Semester Rule" and sec. 17 of Appendix III, given above. If the resolution is enforced against Thomas Jefferson Senior High School, it will bar boys of the twelfth grade from playing football, a right given them by the rules; the result will be that the quoted sections have been repealed and the rules amended by adding thereto this resolution. On this ground, also, the resolution was void.

■ Under these legal principles, the District Executive Committee must be guided by the rules in certifying a district champion, and cannot disqualify Thomas Jefferson Senior High School on the ground that it played its twelfth grade boys. The committee, in making its certificate, must recognize that each high school within its jurisdiction can play its boys, qualified under the rules to play.

It follows that the resolution in issue is absolutely void, and that the District Executive Committee is without power to enforce it.

■ Again, to make their petition good as against the general demurrer, appellants were required to plead facts conferring upon the district court of Jefferson county jurisdiction to grant the relief prayed for— to enjoin the District Executive Committee from enforcing its void resolution.

■ A member may seek judicial relief against his association or one of its agencies, "where property or civil rights are involved, or the proceedings in question are violative of the laws of the society, or the laws of the land, or are illegal." 5 C.J.

1364; 7 C.J.S. 79, Associations; 5 Tex.Jur. 140.

■ When the threatened action would damage him in his property rights, he may enjoin its commission, provided he has no adequate remedy at law; in this case, on the allegations of their petition appellants had no adequate remedy at law. They plead a resulting monetary damage of $20,000; this allegation was sufficient to invoke the jurisdiction of the court to enjoin the enforcement of the void resolution.

■ Again, on the allegations of the petition, the enforcement of the resolution would violate appellants "civil rights." The right of the teachers and officers of Thomas Jefferson Senior High School to use the means provided by the League in preparing their twelfth grade boys to receive this preparation for citizenship, and the right of the boys to receive this preparation, constitute a valuable "civil right," as that term is defined in our general jurisprudence. See the different series of Words and Phrases for a definition of this term.

■ Appellees say by their third counter proposition that the petition was bad on general demurrer for the want of allegations of fraud, oppression, and bad faith on the part of the District Executive Committee in adopting the resolution. These allegations are necessary only when the act complained of is voidable, and not where it is absolutely void, as was the action of the committee in adopting the resolution in issue.

From what we have said it follows that the lower court erred in sustaining the general demurrer.

■ The right appellants seek to protect will expire by operation of the law of the League on the 27th day of this month; under the rules governing appeals, if the rights granted thereby are exercised, all questions presented by this appeal will become moot before our judgment can be certified to the lower court for its direction. Sterling v. Ferguson, 122 Tex. 122, 53 S.W.2d 753; Speed v. Keys, Tex.Sup., 109 S.W.2d 967, not yet reported in State report. In reviewing appellants' petition and by decreeing that the lower court erred in sustaining against it the general demurrer, we have followed the precedent set by the Supreme Court in the Ferguson Case, supra, for this is what the Supreme Court did in that case.

Having determined that the court erred in sustaining the general demurrer, what should be our order? Neither party has suggested that the issues are moot; appellants ask for relief, and appellees pray for an affirmance of the judgment of the lower court: thus they have invited a final judgment by us which they have the liberty to obey. On this statement, our order is that the judgment of the lower court be reversed and the cause remanded for a new trial.