

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable M. O. Flowers
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. O-2188

Re: Is the Secretary of State
authorized to deny a place
on the ballot in the gener-
al election to candidates
of the Communist Party?

We have your request for an opinion on the above question.

Being well aware of the profound significance of the question you have presented, we have endeavored to give it the deliberate study it deserves. In times like the present, when cataclysmic world events shake the very foundations of the institutions of men, we will do well to approach with humility questions which affect those institutions. Under stress of the universal conflict of ideologies the very word "communist" has come to have a connotation of peril. The word has become linked in our emotions with anarchy and revolution. It is inevitable that we should look with suspicion upon those who profess communism as their political faith. It is only human that we should wish to expel them from any participation in the functions of our democracy. However, being called on, as we now are, to determine whether our constitution and laws give to the Secretary of State of Texas the authority to deny a place on the ballot in a general election to the nominees of the Communist, or any other political party, we must be guided, not by our emotions, desires or prejudices, but by the words and spirit of the constitution and laws which it is our solemn duty to uphold. Let us not forget the admonition of Mr. Justice Pound (People vs. Gitlow, 136 N.E. 317, at p. 327) that "the rights of the best of men are secure only as the rights of the vilest and most abhorrent are protected".

The first amendment of the Constitution of the United States provides:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable M. O. Flowers, Page 2

> "Congress shall make no law . . . . abridging
> the freedom of speech, or of the press; or the
> right of the people peaceably to assemble, and
> to petition the Government for a redress of
> their grievances."

Section III of the Bill of Rights of the Texas
Constitution declares:

> "All free men, when they form a social com-
> pact, have equal rights, and no man, or set of
> men, is entitled to exclusive separate public
> emoluments, or privileges, but in consideration
> of public services."

The principles announced and rights guaranteed by
these constitutional provisions apply to all citizens re-
gardless of political faith. These principles were force-
fully illustrated in Jefferson's preamble to the Virginia
Act for establishing Religious Freedom. His words apply as
well to political as to religious freedom.

> "To suffer the civil magistrate to intrude
> his power into the field of opinion, and to re-
> strain the profession or propagation of princi-
> ples on supposition of their ill tendency, is a
> dangerous fallacy; which at once destroys all
> religious liberty, because he being of course
> judge of that tendency, will make his opinion
> the rule of judgment, and approve or condemn the
> sentiments of others only as they shall square
> with or differ from his own."

Speaking over one hundred years later, Mr. Justice
Holmes reaffirmed the same philosophy when he said: (Dis-
senting in Abrams vs. U.S., 250 U.S. 616)

> " . . . We should be eternally vigilant
> against attempts to check the expression of
> opinions that we loathe and believe to be
> fraught with death, unless they so imminently
> threaten immediate interference with the lawful
> and pressing purposes of the law that an imme-
> diate check is required to save the country."

These same principles have been repeatedly an-
nounced by the courts of Texas, but never more succinctly
than by Mr. Justice Gaines, speaking for the Supreme Court
of Texas in Steusoff vs. State, 80 Tex. 428:

Honorable M. O. Flowers. Page 3

> "When a constitution has been framed which
> contains no provision defining in terms who shall
> be eligible to office, there is strength in the
> argument that the intention was to confide the
> selection to the untrammeled will of the elec-
> tors. Experience teaches us that in popular elec-
> tions only those are chosen who are in sympathy
> with the people both in thought and aspiration
> . . . "

With these general principles in mind let us turn
to a consideration of the specific question before us, i.e.,
the powers, duties and discretion relating to elections
vested by the Constitution and laws of the State in the Sec-
retary of State.

Section 3 of Article IV of the Constitution pro-
vides that:

> "The returns of every election for said
> executive officers, until otherwise provided by
> law, shall be made out, sealed up, and trans-
> mitted by the returning officers prescribed by
> law, to the seat of government, directed to the
> Secretary of State, who shall deliver the same
> to the Speaker of the House of Representatives
> . . . "

Section 21 of Article IV directs the Secretary of
State to "perform such other duties as may be required of
him by law". Insofar as these duties relate to elections,
these duties are enumerated in the statutes comprising Title
50 of the Revised Civil Statutes, and Title 6 of the Penal
Code. Article 2925, Revised Civil Statutes, directs him to
"prescribe forms of all blanks" for ballots, etc., "and fur-
nish same to each county judge". Articles 2926 and 2979 pro-
vide that the death of any state or district officer or nomi-
nee shall be certified bo the Secretary of State. Article
2928 prohibits the Secretary of State from issuing certifi-
cates of election or appointment to anyone "who is not eli-
gible to hold such office under the Constitution . . . "
Article 2982 requires the Secretary of State to hold a draw-
ing to determine the order in which proposed constitutional
amendments shall appear on the ballot. Article 2997a di-
rects the Secretary of State to examine and approve voting
machines. Articles 3026a and 3035 direct county judges to
mail election returns to the Secretary of State, and Article
3034 provides that he shall open and count the returns of
elections. Article 3155 requires state committees of polit-
ical parties whose nominee for governor polled between 10,000

Honorable M. O. Flowers, Page 4

and 100,000 votes at the last election to certify to the Secretary of State whether they will nominate their candidate by convention or primary election. Article 3157 requires such nominations to be certified to the Secretary of State. By Article 3159, non partisan or independent candidates are directed to make application to the Secretary of State to have their names placed on the ballots, and Article 3161 directs the Secretary of State to relay the names to the county clerks. Articles 3168-3173 provide for reports of campaign expenditures to be made to the Secretary of State.

This enumeration of the statutory duties of the Secretary of State relating to elections indicates that all of his said duties are ministerial in character. Nowhere do we find any discretionary power lodged in the Secretary of State to authorize him to refuse a place on the ballot to the duly designated nominees of any political party.

This precise question was before the Austin Court of Civil Appeals in Morris vs. Mims, 224 S.W. 587. Suit was brought to restrain the Secretary of State from certifying the nominees of the American party, to the election officers. In denying the relief sought, the court in a per curiam opinion declared:

"The Legislature may make reasonable regulations as to how nominations may be made, but it cannot prohibit such nominations, whether by a new party or an old one (Gilmore vs. Waples, 108 Tex. 167, 188 S.W. 1039); and it cannot nullify the effect of such nominations, when legally made, by prohibiting the printing of the names of such nomineesuupon the official ballot, the same being the only ballot that can be legally voted.

"The statute prescribes no method by which a new party may make nominations. Such being the case, a new party has the right to pursue any reasonable method in making its nominations, not prohibited by law. As the American party pursued one of the methods prescribed by statute for making nominations by pre-existing parties, we hold that such method was reasonable, and, as there is no law forbidding it to pursue such method, we hold that its nominations of the candidates named in the petition herein were legally made. The same having been properly certified to the secretary of state, it is his duty to certify the names of such candidates to the proper election officers, whose duty it will be to print or cause to be

901

printed the names of such candidates on the offi-
cial ballots as the nominees of the American Par-
ty." (Emphasis ours)

That it is not within the discretion of the Sec-
retary of State to refuse to place upon the ballot at a gen-
eral election the duly certified candidates of a political
party was likewise held by the Supreme Court of Texas in
Sterling vs. Ferguson, 122 Tex. 122, 53 S.W. (2d) 753. The
opinion which was signed by all three justices (Cureton,
Greenwood and Pierson) quoted with emphasis the following
statement from 9 Ruling Case Law, p. 1090, Sec. 100:

"... where provision is made for the is-
suance of a nomination certificate, and one is
issued, the holder is entitled to have his name
printed on the official ballot, at least until
it is set aside in proper proceedings."

The opinion quotes Article 230 of the Penal Code:

"Any judge, clerk, chairman or member of an
executive committee, collector of taxes, county
clerk, sheriff, county judge or judge of an elec-
tion, president or member of a State Convention
or Secretary of State, who willfully fails or re-
fuses to discharge any duty imposed on him under
the law, shall be fined not to exceed five hun-
dred dollars unless the particular act under some
other law is made a felony."

and declares significantly:

"Moreover, for a willful failure to certify
the names of the nominees of a party as filed
with the Secretary of State, that officer is
punishable by a fine not exceeding $500 as speci-
fied in the Article of the Penal Code just quot-
ed ...

"It is clear, we think, that these statutes
(relating to ballots at general elections) are
mandatory, in the sense that the candidate and
the citizens have rights to be subserved thereby,
which may be enforced, and the statutes should
be obeyed."

It is our considered opinion, that under the fore-
going authorities the Secretary of State of Texas is but a

Honorable M. O. Flowers.    Page 6

ministerial officer with respect to the conduct of elections, and he may not in his discretion refuse a place on the ballot at a general election to the nominees of any political party who have been duly nominated and certified to him according to law.

It follows, therefore, that the Secretary of State is not authorized to deny a place on the ballot in the general election to candidates of the Communist Party.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

By Walter R. Koch

Walter R. Koch
Assistant

APPROVED JUN 28, 1940

ATTORNEY GENERAL OF TEXAS

WRK:EP

THIS OPINION
CONSIDERED AND
APPROVED IN
LIMITED
CONFERENCE