## KILDAY et al. v. STATE ex rel. CANDLER et al.

### No. 9641.

Court of Civil Appeals of Texas. San Antonio.

Sept. 22, 25, 1934.

Johnson, Rogers, Slatton & Johnson, of San Antonio, and Charles L. Black, of Austin, for appellants.

Walter Tynan and Joe Burkett, both of San Antonio, for appellees.

BICKETT, Chief Justice.

This proceeding is in the nature of a quo warranto action, brought under article 3173, Revised Civil Statutes of Texas (1925), to prevent the name of James V. Allred, the nominee of the Democratic Party in Texas for the office of Governor, from being placed on the official ballot for the general election to be held November 6, 1934.

The petition was filed on September 14, 1934, in the district court of the Ninety-Fourth judicial district in the name of the state of Texas, acting by Walter Tynan, the district attorney of Bexar county, upon the relation of Ralph Candler, Frank Campbell, and J. L. Burd. It named as defendants W. W. Heath, secretary of state, James E. Kilday and Albert Sidney Johnson, chairman and secretary, respectively, of the recently adjourned state Democratic Convention, James V. Allred, nominee of the Democratic Party for the office of Governor, R. G. Waters, alleged campaign manager of Mr. Allred, and others, alleged to be assistant campaign managers of his in different counties or alleged to be agents of such managers. It contained formal allegations conforming to the article under which it was brought, and it alleged, in substance, that the candidate and his campaign manager had filed with the secretary of state the required primary election expense accounts, that the accounts actually showed expenditures aggregating $14,337.94, that the candidate and the campaign manager had expended other large sums not accounted for, some of which were specified and some of which were estimated, for local and state-wide radio speeches, for newspaper advertisements, and for other purposes, that the assistant campaign managers and others had expended large sums with the knowledge and consent of the candidate and had failed to file the required primary expense accounts, and that the total of the campaign expenditures by and on behalf of the candidate with his knowledge and consent exceeded by more than $20,000 the maximum permitted by law to be spent for those purposes. The prayer of the petition was for an interlocutory injunction and for a final judgment to prevent the certification of the name of the candidate as the nominee of the Democratic Party for the office of Governor and to prevent the placing of his name as such candidate on the official ballot for the general election and to forfeit his right to the nomination.

The district judge, in vacation, upon an ex parte hearing without notice, granted a temporary injunction restraining the certification of the name and the placing thereof on the official ballot for the general election pending the trial of the case or the further orders of the court.

Mr. Heath, the secretary of state, Mr. Allred, and all of the other defendants, except one who, it seems, was erroneously named and was unknown, have perfected an appeal from the temporary injunction.

Articles 3168–3172, Revised Civil Statutes of Texas (1925), regulate in detail the matters of contributions to and of expenditures by or on behalf of candidates for nominations in primary elections. Article 3170 expressly limits to $10,000 the total that may be expended by a candidate for the nomination for the office of Governor, or by his campaign manager or assistant campaign managers, or by others with his knowledge and consent for the purposes of the primary election. Article 3172 requires the filing of sworn accounts by the candidate for nomination, the campaign manager, and the assistant campaign managers.

Article 3173, Revised Civil Statutes of Texas (1925), reads as follows: "Any candidate who shall knowingly violate, or who shall knowingly permit or assent to the violation of any provision of this chapter by any campaign manager or assistant campaign manager, or other person, shall thereby forfeit his right to have his name placed upon the primary ballot, or if nominated in the primary election, to have his name placed on the official ballot at the general election. Proceedings by quo warranto to enforce the provisions of this article, or to determine the right of any candidate alleged to have violated any provision of this chapter, to have his name placed on the primary ballot, or the right of any nominee alleged to have violated any provision of this chapter to have his name placed upon the official ballot for the general election, may be instituted at the suit of any citizen in the district court of any county, the citizens of which are entitled to vote for or against any candidate who may be charged

in such proceedings with any such violation. All such proceedings so instituted shall be advanced, and summarily heard and disposed of by both the trial and appellate courts."

■ The Constitution of Texas having prescribed the requisite qualifications for one to be the Governor of the state and having fixed the grounds of ineligibility applicable to that office, it is beyond the power of the Legislature to add another ground of disqualification.

These constitutional provisions are clear and explicit. Article 4, § 4, fixes the affirmative qualifications that, "He shall be at least thirty years of age, a citizen of the United States, and shall have resided in this State at least five years immediately preceding his election." Other provisions, applicable to the Governor, as well as to other officers, for example, are: Article 1, § 4, that no religious test shall be required as a qualification, provided one acknowledges the existence of a Supreme Being; article 16, § 1, that one shall take the constitutional oath of office; article 16, § 2, that one shall not have been convicted of bribery, perjury, forgery, or other high crimes; article 16, § 4, that one shall not have been guilty of dueling; article 16, § 5, that one shall not have been convicted of having given or offered a bribe to procure his election to office; article 16, § 9, that absence on certain official business shall not deprive one of the right of being elected to office; article 16, § 12, that one shall not be an officer of the United States, any other state, or any foreign power; article 16, § 14, that one is required to reside within the state and to keep his office at the place required by law; article 16, § 40, that one shall not hold more than one office with certain exceptions.

The Supreme Court, in Dickson v. Strickland, 114 Tex. 176, 265 S. W. 1012, 1015, in speaking of the constitutionality of legislative qualifications and disqualifications added by an act of the Thirty-Sixth Legislature (Acts of 1919, Regular Session, chapter 13, p. 17, and Second Called Session, chapter 40, p. 97 [Vernon's Ann. Civ. St. Supp. 1922, arts. 3082, 3083, 3083a]), said: "In so far as this act related to officers, such as the Governor, whose qualifications had been particularly and carefully and differently enumerated in the Constitution, it cannot be doubted that it was utterly void."

■ Therefore, the first sentence of article 3173, quoted above, in so far as it imposes a test of eligibility or ineligibility for one to have his named placed on the official ballot at the general election as the nominee of a party and a candidate for the office of Governor is unconstitutional. To prescribe a qualification or disqualification for one to have his name placed on the ballot as a candidate is to prescribe a qualification or disqualification to hold the office. It is only by having one's name placed on the ballot that he can be said in any fair sense to have the opportunity to obtain the office at the election. If he is not disqualified to hold the office, he is not disqualified to have his name placed on the ballot. This statute does undertake to add a disqualification not provided nor authorized by the Constitution.

It is contended that the statute does not set up a disqualification, but inflicts a penalty by way of forfeiture authorized by other provisions of the Constitution. Reference is made to article 6, § 4, in part, as follows: "In all elections by the people the vote shall be by ballot and the Legislature shall provide for the numbering of tickets and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot box." And the latter portion of article 16, § 2, is quoted, that: "The privilege of free suffrage shall be protected by laws regulating elections and prohibiting under adequate penalties all undue influence therein from power, bribery, tumult or other improper practice." The Legislature has carried out those mandates of the Constitution as to preserving the purity of the ballot and protecting the privileges of free suffrage by the enactment of various penal statutes, among which are articles 262–269, Penal Code of Texas (1925). These articles of the Penal Code relate to substantially the same matters as articles 3168–3172 of the civil statutes, above referred to. For example, the expenditure of more than $10,000, by or on behalf of a candidate for the nomination for the office of Governor in a primary election is made a penal offense of the grade of felony. The framers of the Constitution at the time made detailed provisions as to qualifications and disqualifications of the Governor, in connection with which only one reference was made to disqualifications arising from elections, namely, article 16, § 5, relating to bribery in elections. Thus it is apparent that the Constitution not only did not authorize the Legislature to create new qualifications or disqualifications for the Governor, but upon the contrary foreclosed all future legislation upon that subject.

It must be added, too, that the attempt to maintain a bar to the right to go upon the official ballot as a candidate for the office of Governor, upon the theory that it is a pen-

alty by way of forfeiture and not a disqualification, is a refinement of legal reasoning that belongs only to the period of our judicial history in "The Tragic Era." Witness the decision in Ex parte Rodriguez, 39 Tex. 706, whereby that court as then constituted earned its lasting sobriquet of "the semicolon court." The structure of our government does not rest upon such fine points, but rather upon broad and plain principles easily perceived by all.

The Constitution has withdrawn from the courts all jurisdiction to adjudicate the eligibility of a candidate in the general election for the office of Governor and has conferred upon the Legislature exclusive jurisdiction of the subject.

Article 4, § 3, of the Constitution reads: "The returns of every election for said executive officers, until otherwise provided by law, shall be made out, sealed up, and transmitted by the returning officers prescribed by law, to the seat of Government, directed to the Secretary of State, who shall deliver the same to the Speaker of the House of Representatives, as soon as the Speaker shall be chosen, and the said Speaker shall, during the first week of the session of the Legislature, open and publish them in the presence of both Houses of the Legislature. The person, voted for at said election, having the highest number of votes for each of said offices respectively, and being constitutionally eligible, shall be declared by the Speaker, under sanction of the Legislature, to be elected to said office. But, if two or more persons shall have the highest and an equal number of votes for either of said offices, one of them shall be immediately chosen to such office by joint vote of both Houses of the Legislature. Contested elections for either of said offices, shall be determined by both Houses of the Legislature in joint session."

Emphasis is added to clearness by the language that, "The person * * * being constitutionally eligible, shall be declared by the Speaker, under sanction of the Legislature, to be elected to said office." Constitutional eligibility is under the sanction of the Legislature. It is noteworthy that the Journal of the Constitutional Convention of 1875, p. 229, shows that the first draft of the article provided that the declaration by the speaker be "under the Legislature" and that it was amended by insertion of the words "the sanction of." Thus there was added the requirement of a solemn and ceremonious determination by the Legislature of the constitutional eligibility of the one about to be declared the elected Governor.

The decision of the Supreme Court in Dickson v. Strickland, supra, is decisive of this case. There suit was instituted against the secretary of state to prevent the name of Mrs. Miriam A. Ferguson, the nominee of the Democratic Party for the office of Governor, from being placed on the official ballot in the general election of 1924 as such nominee and as a candidate for that office. The basis of the suit was certain alleged disqualifications, none of which are found in the Constitution. The court held not only that there could be no grounds of ineligibility for the office except those specified in the Constitution, but that the Constitution had committed to the Legislature and withdrawn from the judiciary the power to determine all questions of eligibility. Accordingly, the court held that Mrs. Ferguson was entitled to have her name placed on the official ballot in the general election as the nominee of the Democratic Party and as a candidate for the office of Governor.

The Supreme Court in that case, speaking through Mr. Justice Greenwood, said:

"No one can be inducted into the office of Governor without a legislative determination of his election. Not only must the Legislature determine that he received the highest number of votes, but section 3 of article 4 requires a legislative adjudication of his constitutional eligibility. Should the election be contested on the ground of lack of constitutional eligibility, or on any other ground, such contest may be determined only by both houses of the Legislature in joint session.

"The Constitution, having committed to the Legislature, and withheld from the judiciary, the power to determine the eligibility of all elective state officers of the executive department, such power of determination must be exercised by the Legislature and could not be granted away to the courts, at least in so far as the attempted grant pertains to the general election whose result is to be declared only under sanction of the Legislature, after inquiring into the constitutional qualifications of the person found to have received the highest number of votes. * * *

"An election contest necessarily involves questions of both fact and law. It may be predicated upon a status or upon facts which existed before an election, upon what took place at the election, and perhaps in some instances upon a status or what took place after an election. The ineligibility of a candidate before an election, whether arising from lack of age, or from personal misconduct, or other infirmities, the manner of giving notice of the election, appointing election

officers, their qualification, the creation of election districts, the preparation of the polls or polling places, the manner in which the ballots may have been prepared, and various other things which of necessity precede an election, are all well known subjects of election contests. * * *

"In view of the general rules to which we have referred, we would undoubtedly be doing violence to the constitutional provision which places the power of hearing a contested election in the Legislature, if we were to say that the courts were likewise given power over contests of election for Governor, merely because the courts generally have power over justiciable questions, and may, on occasion, have power over results which flow from the decisions of bodies having jurisdiction of contested elections.

"Notwithstanding the present suit was brought before the election, its subject-matter is one confided to the Legislature in a contest over the election, and it is therefore withdrawn from the courts. The Constitution has erected the tribunal and fixed the time and place of determining election contests for Governor, and every justiciable issue in such a contest must be there disposed of. The tribunal erected is a joint session of the Legislature; the time is the first week of the session of the Legislature; the place is the capitol of the state. The subject-matter is everything which can be legally embraced in the phrase 'contested elections.'

"Such a contest may embrace every part of the 'process' of electing a Governor, for the reason that the 'election' which may be contested is not merely the acts of voting, but every step regulated by law, from the announcement of the candidate to the declaration of the result.

"The Legislature is wholly without power to erect another tribunal for determining a contested election for Governor. It is wholly without power to determine that the contest shall, either in whole or in part, be heard before any other tribunal than the joint session of the Legislature, and at the time specified in the Constitution. It is equally without power to confer upon any other tribunal authority to determine any justiciable issue which could arise in a contest before the joint session of the Legislature.

"The language of the Constitution furnishes no sanction for the withdrawal of questions of law, any more than questions of fact, from determination by the Legislature. All questions, whether of law or fact, are alike committed to the Legislature, which may be involved in a contest of the right of any one to hold an elective, executive, state office as the result of a general election."

Therefore, the district court has no jurisdiction to entertain, hear, or determine this quo warranto proceeding.

The authorities cited by the appellees do not bear upon the questions here presented. Staples v. State ex rel. King, 112 Tex. 61, 245 S. W. 639, and Staples v. State ex rel. Eubanks (Tex. Civ. App.) 244 S. W. 1068, involved the office of United States Senator, as to which the Constitution of Texas does not define the qualifications nor name the Legislature as the forum. Ferguson v. Maddox, 114 Tex. 85, 263 S. W. 888, and Love v. Wilcox, 119 Tex. 266, 28 S.W.(2d) 515, involved the rights of persons to be candidates in party primary elections, not general elections. Watts v. State, 61 Tex. Cr. R. 364, 135 S. W. 585, upheld the constitutionality of the penal statute making it an offense for one to lend money to another for the payment of a poll tax.

It is to be distinctly understood that the effect of this decision is limited to holding unconstitutional the article of the civil statutes attempting to prescribe a disqualification for one who is a candidate in the general election for the office of Governor and to confer jurisdiction upon the courts to determine such an alleged disqualification. The penal statutes concerning expenditures in primary elections and in general elections are, of course, unaffected by this decision.

The judgment of the district court granting the interlocutory injunction will be reversed and the injunction will be dissolved.

MURRAY, Justice.

While I do not concur in the reasons given by Chief Justice BICKETT in the above opinion, I do concur in the conclusion arrived at for the following reasons, to wit:

The injunctive order issued in this case is to remain in force until the cause is tried on its merits. The citation is returnable to the October term of the trial court, but no definite date is set for the beginning of the trial. James V. Allred, as the Democratic nominee or candidate for Governor, is entitled to have his name printed on the official ballot at the general election to be held on November 6, 1934. This includes the right to have the officers comply substantially with all of the provisions of the law with reference to the preparing for the

election. It includes the right to have the secretary of state make up and mail out his certificate to the various county clerks of the state, showing the candidate's right to have his name appear upon the official ballot as the Democratic nominee for Governor; to have the various county clerks make up the ballot form and post same for 10 days before the tickets are printed and in sufficient time to insure that the clerk will be in possession of official ballots at least 20 days before November 6, 1934, for the use of those desiring to cast absentee votes. Under the provisions of article 3135, R. S. 1925 as amended by Acts 1927, c. 196, § 1, and the holdings of the Supreme Court of this state in Sterling v. Ferguson, 122 Tex. 122, 53 S.W.(2d) 753, and Thomason v. Seale, 122 Tex. 160, 53 S.W.(2d) 764, the secretary of state should send forth his certificate to the various county clerks of the state not later than October 1 next preceding the November general election. The nominee of the party is entitled to have all of these things done unless and until a proper tribunal has at a hearing on the merits of the case set aside his certificate of election.

▮ It is plain in this case that a hearing of the merits of the cause will not be held until after October 1, 1934. It therefore becomes our duty to reverse the order of the trial judge and dissolve the writ of injunction so that the secretary of state and other officers may perform the duties required of them by the statutes of this state.

It is pointed out that under the above holdings there is not sufficient time to contest an election for a state office or to prosecute a quo warranto proceeding under the provisions of article 3173 (Rev. St.). This is probably true. Originally there was sufficient time between the primary and the general election for a proceeding of this nature, but when the second primary and absentee voting were added, the time was so reduced that there is now probably insufficient time for any kind of a contest. The general election must take place on November 6, the courts are powerless to enjoin the holding of a general election, and, if the time is insufficient, there is nothing that the courts can do about the matter.

The injunction prohibits the chairman and secretary of the recent Democratic Convention from issuing a certificate of nomination to James V. Allred. This involves purely a ministerial duty and, if not already done, should be performed by such chairman and secretary at once.

Sept. 25, 1934

MURRAY, Justice.

I deem it proper that I should express my reasons for not concurring in what now becomes the majority opinion. Articles 3170 to 3173, inclusive, in my opinion do not have the effect of adding an additional qualification or disqualification for the office of Governor not stated in article 4, § 4. The above statutory provisions are to the effect that a candidate for Governor who spends more than $10,000 in his campaign for a party nomination is not entitled to have his name placed upon the official ballot in the general election. There are two constructions that may be given this language. We might construe the words "placed on the ballot" to mean that such a candidate was not entitled to have his name printed or written on the ballot, and thus he would be prohibited from being elected to the office of Governor. On the other hand, the expression "placed on the official ballot" might be construed as meaning printed on the official ballot. If the language be given the first meaning, it would be unconstitutional as being at variance with the Constitution, art. 4, § 4, which provides the qualifications of a candidate for Governor, and therefore void; but, if given the latter meaning, it would only deal with the privilege of having his name printed upon the official ballot as a reward for having been the successful candidate at a party primary and would not be in conflict with the Constitution and would be a valid provision of the statutes. Where the statute provides that a candidate may gain an advantage by successfully complying with the statutes having reference to primary elections, it may also provide for a forfeiture of that privilege by a failure to comply with such statutes or for a violation of the same.

Where the language is reasonably susceptible of two constructions, one of which will render it void and the other will render it valid, it is the duty of a court to accept that construction which will render it valid and not that which will render it void. Staples v. State, 112 Tex. 70, 245 S. W. 639.

In my opinion, the courts of this state have jurisdiction of election contests and other proceedings with reference to nominations for the office of Governor at primary elections. This is definitely decided in the case of Sterling v. Ferguson, 122 Tex. 122, 53 S.W.(2d) 753, 755. In that case Sterling had brought a suit to prevent the printing of Mrs. Ferguson's name on the official bal-

lot and also to contest the election. The Court of Civil Appeals of the Third district certified to the Supreme Court the following question: "Did the trial court err in sustaining said plea and motion for want of jurisdiction in the court to hear and determine the contest and proceeding, and in entering the judgment of dismissal?" The Supreme Court answered this question in the affirmative.

It is quite apparent that to hold otherwise would be to hold that the statutes limiting campaign expenditures in a primary election are ineffective as far as the office of Governor is concerned. Section 3 of article 4 of the Constitution authorizes the Legislature to determine whether the candidate receiving the most votes is constitutionally eligible, and to hear an election contest. Thus it will be seen that a candidate who has spent more money than allowed will not be constitutionally ineligible to hold the office, and in an election contest the Legislature would hardly declare a candidate with an overwhelming majority to be defeated because his name should not have been printed upon the ballot, and thus declare a candidate with a very small minority vote to be the choice of the voters. There would be no stage of the proceeding at which a penalty could be enforced, and our "Corrupt Practices Act" would be rendered ineffective and unenforceable.

The validity of articles 3170–3173 was upheld in Staples v. State ex rel. Eubanks (Tex. Civ. App.) 244 S. W. 1068, 1071, which was a quo warranto proceeding under the above statutes. The Supreme Court of this State said: "We reject the contention that the secretary of state and the members of the election boards are not subject to control by a court through injunction process. * * * But, if Mayfield has committed acts through which he has forfeited his right to appear on the ballot as the Democratic candidate for United States Senator, then he has lost the right to have his name certified as such candidate by the secretary of state. * * *"

In Love v. Wilcox, 119 Tex. 267, 28 S. W.(2d) 515, 520, the Supreme Court said: "We do not believe there is any appreciable conflict in the authorities upon the proposition that where the making of party nominations by political parties is once regulated by the statute law the rights created and protected by a statute are legal, as distinguished from political, rights."

To the same effect is Ferguson v. Wilcox, 119 Tex. 280, 28 S.W.(2d) 526; Ferguson v. Huggins, 122 Tex. 95, 52 S.W.(2d) 904.

For the above reasons I find myself unable to concur in the conclusion that article 3173 is unconstitutional and void as prescribing additional qualifications for the office of Governor, and that the courts of this state are without jurisdiction to hear and determine matters of the nature involved herein when timely brought and prosecuted.

SMITH, Justice.

I concur in the judgment of reversal and dissolution of the injunction upon the ground, primarily, that if upheld the judgment would have the effect of condemning (without a hearing) the admitted nominee of a great party of violating a penal statute, and of depriving him of a reasonable opportunity of meeting the burden (unjustly thrust upon him by the injunction) of proving his innocence in time to reclaim his right to a place upon the official ballot at a general election. In short, and going one step further, to the ultimate logical conclusion, the case is moot, and in my opinion should be summarily dismissed. It develops and demonstrates but one of the numerous incongruities of the statutory monstrosity known as the Terrell Election Law, which only the Legislature, and not the courts, can effectually remedy. Holding these views, I concur in the foregoing opinion of Justice MURRAY. Upon the original disposition, and for lack of time to fully investigate the question, I was in doubt concerning the holdings expressed in the opinion of the Chief Justice, but upon further and, I hope, mature consideration, I have reached the conclusion that those holdings are correct, and supported by sound reason and justice, as well as by settled authority. I believe, with the Chief Justice, that the provisions of article 3173 (Rev. St.), if enforceable, have the effect of imposing an additional qualification upon candidates for state office not prescribed by our Constitution, and that such effect renders that statute invalid. And I believe, further, that not only as a necessary corollary to that holding, but independently of it as well, the district court has no jurisdiction of the purely political question presented in this case.

I therefore conclude, with the Chief Justice, that the district court has no power to adjudicate the questions presented in the case made, and that being so, it is quite clear to me that the judgment should not

only be reversed and the improvident injunction dissolved, but the whole proceeding should be summarily dismissed from all courts. This opinion will be substituted for the preliminary opinion filed by me, which is withdrawn.