

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

November 12, 1970

Honorable Preston Smith
Governor of the State of Texas
State Capitol Building
Austin, Texas 78711

Opinion No. M-728

Re:   Whether Price Daniel is
      eligible for appointment
      to the Texas Supreme Court
      in view of the fact his son
      is a member of the House
Dear Governor Smith:                       of Representatives?

Your recent request for an opinion of this office poses the following question:

"Would you please advise this office whether or not
former governor, Price Daniel, is eligible for ap-
pointment to the Supreme Court of Texas, since his
son, Price Daniel, Jr., is a member of the Texas
House of Representatives?"

We find that the eligibility qualifications for the office of a Supreme Court Justice and the authorization for appointments to fill such a vacancy are set out in the Constitution of Texas, which created the Supreme Court by its Sections 1 and 2 of Article V. The provisions of Article V relating to eligibility and appointments are as follows:

"Sec. 2. The Supreme Court shall consist of a Chief
Justice and eight Associate Justices, any five of whom
shall constitute a quorum, . . . No person shall be eli-
gible to the office of Chief Justice or Associate Justice
of the Supreme Court unless he be, at the time of his
election, a citizen of the United States and of this state,
and unless he shall have attained the age of thirty-five
years, and shall have been a practicing lawyer, or a
lawyer and judge of a court of record together at least
ten years. . . . In case of a vacancy in the office of any

-3528-

Justice of the Supreme Court, the Governor shall fill
the vacancy until the next general election for state of-
ficers, and at such general election the vacancy for the
unexpired term shall be filled by election by the quali-
fied voters of the state . . ." (Emphasis added.)

"Sec. 28. Vacancies in the office of judges of the Supreme
Court, the Court of Criminal Appeals, the Court of Civil
Appeals and the District Courts shall be filled by the Governor
until the next succeeding General Election; . . ." (Emphasis
added.)

Other constitutional qualifications and disqualifications applicable
alike to judges and other offices of public trust are contained in Sections
2, 5, 12, 40 and 41 of Article XVI, and Section 4 of Article XV, of the Texas
Constitution.  None of these constitutionally enumerated disqualifications re-
lates to kinship with a member of the Legislature.

Although the above quoted specific provisions for appointments by
the Governor to fill judicial vacancies do not require Senate confirmation,
this office expressed the opinion in Attorney General's Opinion No. O-1092
(1939) that the general provisions of Section 12 of Article IV are applicable
to these judicial appointments and require that they be confirmed by the
Senate.  This interpretation has been followed for many years by Texas
Governors and Senates.  The relevant portion Section 12 of Article IV reads:

"Sec. 12.  All vacancies in State or district offices,
except members of the Legislature, shall be filled un-
less otherwise provided by law, by appointment of the
Governor, which appointment, if made during its ses-
sion, shall be with the advice and consent of two-thirds
of the Senate present.  If made during the recess of the
Senate, the said appointee, or some other person to fill
such vacancy, shall be nominated to the Senate during
the first ten days of its session . . . Appointments to
vacancies in offices elective by the people shall only
continue until the first general election thereafter."

Your inquiry thus raises the controlling question of whether the
general statutory provisions of the Anti-Nepotism Law (Articles 432-435 of

Vernon's Penal Code) apply to those offices created by the Constitution and for which the Constitution has enumerated the qualifications of those eligible to serve and the method of appointment to fill vacancies.  We quote the pertinent portion of Article 432:

> "No officer of this State nor any officer of any district, county, city, precinct, school district, or other municipal subdivision of this State, nor any officer or member of any State district, county, city, school district or other municipal board, or judge of any court, created by or under authority of any General or Special Law of this State, nor any member of the Legislature, shall appoint, or vote for, or confirm the appointment to any office, position, clerkship, employment or duty, of any person related within the second degree by affinity or within the third degree by consanguinity to the person so appointing or so voting, or to any other member of any such board, the Legislature, or court of which such person so appointing or voting may be a member, when the salary, fees, or compensation of such appointee is to be paid for, directly or indirectly, out of or from public funds or fees of office of any kind or character whatso-- ever; . . ."

Article 433 enumerates the offices to which "The inhibitions set forth in this law. . ." shall apply, including executive officers, judges, members of the Legislature, members of State Boards, school boards, city councils, etc.  Article 434 prohibits trading of appointments, and Article 435 prohibits payment of warrants or other conpensation to ". . . such ineligible officer or person, knowing him to be so ineligible. "

It is apparent that the Act was intended to cover a vast number of statutory State, district, county and city offices and to make ineligible for appointment relatives of the appointing or confirming officers.  With reference to statutory offices, the Act has been held valid in numerous decisions of the Courts and opinions of the Attorney General.  Although the language of the statute is comprehensive enough to apply to constitutional officers whose qualifications are fixed by the Constitution, our research reveals that no decision exists which  holds that they are applicable to such offices. Consequently, the fact situation presented by your request, as applied to

the anti-nepotism statute, presents a legal question of construction of Article 432 which has not been previously passed upon in this state.

Article 432 has been construed by this office to apply to a brother of one of the members of the Legislature (House) so that he might not be appointed to serve on the Board of Directors of the Guadalupe-Blanco Authority.  Attorney General Opinion No. O-6428 (1945).  However, there is no opinion of this office passing upon the application of this statute to those officers whose qualifications on grounds of eligibility or ineligibility are prescribed by the Constitution of Texas, and therefore any Attorney General opinions which have construed the statute would be distinguishable from this situation presented.

The rule in Texas and in a majority of the other states is stated in 34 ALR2d 155, 163-171, as follows:

> "Generally speaking, a state legislature's power as to prescribing eligibility qualifications for constitutional officers ordinarily is not equivalent to its power to prescribe such qualifications for statutory offices . . .
> (p. 163.)

> "It is quite generally considered that where a Constitution lays down specific eligibility requirements for a particular constitutional office, the constitutional specification in that regard is exclusive and the legislature (except where expressly authorized to do so) has no power to require additional and different qualifications for such constitutional office." (p. 171.)

This general majority rule is stated in 81 C.J.S. 988, States, Sec. 66; 42 Am.Jur. 909, Public Officers, Sec. 38, notes 11 and 12; 42 ALR 909; 47 ALR 481; 95 ALR 294; 143 ALR 599; 18 ALR2d 241 and 71 ALR2d 352.

Does the Texas Constitution, either expressly or impliedly, give the Legislature the power to impose additional or different qualifications for a Justice of the Supreme Court than those set out in Article V, Section 2?  We can find no such power.  Article V, Section 2, confers no such legislative power, nor does any other Section under Article V, covering the Judicial Department.  We further observe that the legislative power to pass nepotism statutes is not even mentioned in the Constitution.

The subject of nepotism is deemed to be one personal type of disqualification for office. 22 RCL 401, 88 ALR 1103. The enactment of nepotism statutes finds its validity in the exercise of the police power, and the legislature "may prescribe such qualifications for the holding of a statutory office as it sees fit, as long as it does not interfere with any qualification prescribed by the Constitution." 88 ALR 1104. (Emphasis added.) See Ann. Cas. 1917D, 735.

We will now discuss the leading Texas cases in support of the foregoing rule of constitutional construction. The first is Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012 (1924) in which Mrs. Ferguson's eligibility for the office of Governor was challenged because she failed to meet residence requirements of Articles 3082 and 3083a, which were not set forth in the Texas Constitution for the office of Governor, and also because the common law prohibited a woman from serving as Governor. With reference to the statutes which purported to add residence qualifications, the Texas Supreme Court declared:

> ". . . In so far as this act related to officers, such as
> the Governor, whose qualifications had been particularly
> and carefully and differently enumerated in the Consti-
> tution, it cannot be doubted that it was utterly void."
> (at p. 1015.)

The Supreme Court cited 9 RCL 1124 and Cooley's Constitutional Limitations (7th Ed.), page 99 for cases from other states, and quoted the following language from the Supreme Court of Illinois in People v. McCormick, 103 N.E. 1057:

> " 'In our judgment, when the Constitution undertakes to
> prescribe qualifications for office, its declaration is con-
> clusive of the whole matter, whether in affirmative or in
> negative form. Eligibility to office belongs to all persons.
> In our Constitution no other form of stating eligibility to
> office is found than the declaration that no person shall be
> eligible who does not possess certain qualifications. The
> Constitution of the United States is in the same form in
> this particular, and so are the Constitutions of other states.
> The expression of the disabilities specified excludes others.
> The declaration in the Constitution that certain persons are

not eligible to office implies that all other persons are eligible.' " (Emphasis added.) (at p. 1015.)

The Supreme Court of Texas then continued:

"The qualifications of public officers, when defined by the Constitution, are as clearly beyond change by the Legislature as are the qualifications of electors when fixed by constitutional provision. It is the declared law, by both the Court of Criminal Appeals and the Supreme Court of this state, that it is beyond the power of the Legislature to add an additional qualification for an elector to those prescribed by the Constitution. Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 349; Koy v. Schneider, 110 Tex. 378, 218 S. W. 479, 221 S. W. 880. " (at p. 1015.)

Th e Court then quoted from an opinion in Steusoff v. State, 80 Tex. 430, 15 S. W. 1100 (1891) as follows:

" 'Eligibility to office is not declared as a right or principle by any express terms of the constitution, but it rests as a just deduction from the express powers and provisions of the system. The basis of the principle is the absolute liberty of the electors and the appointing authorities to choose and appoint any person who is not made ineligible by the constitution. Eligibility to office therefore belongs not exclusively or specifically to electors enjoying the right of suffrage. It belongs equally to all persons whomsoever not excluded by the constitution. '." (⌐+ p. 1019. )

In Kilday v. State ex rel Candler, 75 S. W. 2d 148 (Tex. Civ. App. 1934, Motion for leave to file mandamus refused by the Supreme Court in 75 S. W. 2d 253), an attempt was made to have the name of James V. Allred removed from the ballot because of a violation of Article 3173 of the Election Code limiting campaign expenses. The San Antonio Court of Civil Appeals said:

"The Constitution of Texas having prescribed the requisite qualifications for one to be the Governor of the state and having fixed the grounds of ineligibility applicable to that office, it is beyond the power of the Legislature to add another ground of disqualification. "

. . . .

"Therefore, the first sentence of article 3173, quoted above, in so far as it imposes a test of eligibility or ineligibility for one to have his name placed on the official ballot at the general election as the nominee of a party and a candidate for the office of Governor is unconstitutional. To prescribe a qualification or disqualification for one to have his name placed on the ballot as a candidate is to prescribe a qualification or disqualification to hold the office . . . ."

. . . . ..

". . . The framers of the Constitution at the time made detailed provisions as to qualifications and disqualifications of the Governor, in connection with which only one reference was made to disqualifications arising from elections, namely, article 16 $\S$ 5, relating to bribery in elections. Thus it is apparent that the Constitution not only did not authorize the Legislature to create new qualifications for the Governor, but upon the contrary foreclosed all future legislation upon that subject. " (at p. 150. )

In overruling a motion to file a petition for the mandamus, the Supreme Court wrote an opinion, reported in 75 S. W. 2d 253, in which it expressly concurred in the language of the Court of Civil Appeals:

"The Supreme Court concurs in the conclusion stated in the opinion of Chief Justice Bickett, in words as follows: 'The Constitution of Texas having prescribed the requisite qualifications for one to be the Governor of the state and having fixed the grounds of ineligibility applicable to that office, it is beyond the power of the Legislature to add another ground of disqualification. '

"We deem it best to add only a few words to the clear discussion of this question in the opinion of the Chief Justice. On this point, his opinion firmly rests on Dickson v. Strick-

land, 114 Tex. 176, 265 S. W. 1012. . . The main question
in that case was whether the disability of coverture rendered
Mrs. Ferguson ineligible to be Governor. The question here
is simply whether a nominee had been rendered ineligible
under a statute adding to the tests of eligibility specified in
the Constitution. The court held in Dickson v. Strickland,
supra, that the constitutional tests of eligibility to hold the
Governor's office could not be altered by statute. Chief
Justice Bickett's opinion follows that decision." (at p. 257.)

In Burroughs v. Lyles, 142 Tex. 704, 181 S. W. 2d 570 (1944), the
Supreme Court declared unconstitutional Article 2929a, which provided that
no person elected or appointed to an executive or administrative public of-
fice for a term of more than two years shall be eligible for nomination or
election to another office the term of which begins before expiration of term
or original office unless he first resigns. The Court said:

". . . It was held by this court in Dickson v. Strickland, 114
Tex. 176, 265 S. W. 1012, that where the Constitution pre-
scribed the qualifications for office it is beyond the legis-
lative power to change or add to the qualifications, unless
the Constitution gives that power. That decision was re-
affirmed in State ex rel Candler et al v. Court of Civil Ap-
peals et al, 123 Tex. 549, 75 S. W. 2d 253. The statute here
involved seeks to impose an additional test of eligibility, other
than what is prescribed by the Constitution, on a candidate
for State office, and for that reason it is void." (at p. 574.)

Citing and following the above cases, the Texas Court of Criminal
Appeals held in Ex Parte Le Fors, 347 S. W. 2d 254 (1961):

"Neither the courts nor the Legislature have the authority
to add to the qualifications prescribed by the Constitution
for the office of District Judge . . ." (at p. 255.)

In the Kilday case, supra, it was argued that the statutes were a
mere exercise of the police power to regulate elections and prevent and
punish corrupt practices, rather than to add eligibility qualifications for
holding constitutional offices. In rejecting this distinction, the Court held
that a statutory test of eligibility which prevents a person from obtaining

a constitutional office by election amounts to an added qualification and is unconstitutional. In this connection the Court of Civil Appeals said:

> ". . . To prescribe a qualification or disqualification for one to have his name placed on the ballot as a candidate is to prescribe a qualification or disqualification to hold the office. . . . If he is not disqualified to hold the office, he is not disqualified to have his name placed on the ballot. This statute does undertake to add a disqualification not provided nor authorized by the Constitution. " 75 S. W. 2d 150.

The Supreme Court, in refusing a motion for mandamus in the above case (75 S. W. 2d 253, 257) arrived at the same conclusion, adding

> ". . . The question here is simply whether a nominee had been rendered ineligible under a statute adding to the tests of eligibility specified in the Constitution . . . "

By analogy, the question here is simply whether an otherwise qualified appointee to a constitutional office is rendered ineligible under a statute which would prevent the Senate from confirming the appointee on account of his relation to a House member. Paraphrasing the Court's holding and applying it to such an appointee, we cannot escape the following conclusion:

> To prescribe a qualification or disqualification for one to be appointed to an office is to prescribe a qualification or disqualification to hold the office . . . If he is not disqualified to hold the office, he is not disqualified to be appointed. When applied to constitutional offices, this statute does undertake to add a disqualification not provided nor authorized by the Constitution.

The Anti-Nepotism Act seeks to restrict the appointing and confirming authorities by adding eligibility disqualifications as shown by the words of the statute itself. Article 433, Vernon's Penal Code, specifically refers to "The inhibitions set forth in this law . . . " and Article 435 specifically designates the proscribed appointee as ". . . such ineligible office or person, . . . "

We have, therefore, concluded that this Act is valid as to the many statutory offices to which it applies, yet it can have no valid application to constitutional offices for which the Constitution itself enumerates the qualifications and disqualifications of persons who may be elected or appointed thereto.   Since under settled cannons of statutory construction, we must presume that the Legislature had the intent to enact a constitutional anti-nepotism statute in harmony with the Constitution, we must hold that the Legislature did not intend that such statute apply to those offices which the Constitution created and for which it prescribed the qualifications without granting to the Legislature any authority to add to such qualifications or eligibility requirements.

In view of the foregoing, we answer your question in the affirmative having concluded that if Price Daniel meets all the constitutional eligibility requirements for appointment as a Justice of the Supreme Court, he is not ineligible because his son is a member of the Texas Legislature.   Article 432, Vernon's Penal Code, does not apply to the office of a Justice of the Supreme Court.

## SUMMARY

If Price Daniel meets all of the eligibility qualifications enumerated in the Texas Constitution for appointment to the office of a Justice of the Supreme Court, he is not ineligible for such appointment because his son is a member of the Texas House of Representatives.   Article 432, Texas Penal Code, the Anti-Nepotism Act, is not applicable, since the Legislature had been given no authority to add to or alter the eligibility qualifications prescribed by the Constitution which created such office.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Kerns Taylor

APPROVED:
OPINION COMMITTEE

W. E. Allen, Acting Chairman

John Grace
Houghton Brownlee
J. C. Davis
Ralph Rash

Meade F. Griffin
Staff Legal Assistant

Alfred Walker
Executive Assistant

Nola White
First Assistant