# Supreme Court of Texas

No. 25-1107

In re Steve Smith,

*Relator*

On Petition for Writ of Mandamus

**PER CURIAM**

Chief Justice Blacklock and Justice Busby did not participate in the decision.

On the last day of the filing period, Relator filed an application to appear on the 2026 Republican primary ballot as a candidate for chief justice of the Texas Supreme Court. Among various statutory requirements to appear on the ballot for this office, candidates must include with their application fifty signatures "from each court of appeals district." TEX. ELEC. CODE § 172.021(g). After receiving a challenge to the application, *id.* § 172.0223, Respondent, the chair of the Republican Party of Texas, rejected Relator's application on December 12 because his application did "not contain fifty valid signatures from each of the fifteen courts of appeals districts." *See id.* § 172.021(g). Relator has brought an original proceeding in this Court and claims entitlement to the extraordinary remedy of mandamus on

the ground that the Election Code's signature requirement violates the Texas Constitution. Relator does not ask us to declare that he satisfied the requirement, nor does he request an opportunity to cure any deficiencies Respondent might have identified in his application materials. Instead, his *sole* request is that we declare, in an emergency posture of Relator's own creation and based on threadbare and extremely expedited briefing, that Section 172.021(g) is facially unconstitutional. And he requests no narrower a remedy than an order directing Respondent to add his name to the ballot regardless of whether he met the statutory requirements. For multiple reasons, we conclude that Relator has not shown entitlement to mandamus relief.

First, in this posture, we need not formally resolve the facial constitutionality of Section 172.021(g) of the Election Code to conclude that this mandamus petition is an unsuitable vehicle to resolve such a weighty question. As we have repeatedly stated, "although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." *In re Walker*, 683 S.W.3d 400, 402 (Tex. 2024) (citing *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993)). A facial constitutional challenge to a longstanding statutory provision is a serious matter that should not be brought at the last possible minute, as this was, without an unusual justification. Reading the petition liberally, Relator's only apparent justification is his own failure to secure a sufficient number of valid signatures even though he waited until the very last day of the filing period to file his application. But his contention is that he need not secure *any*. That claim could have been brought long before it was, on a timeline that would have allowed an

2

orderly resolution without upending the rules governing primary elections in the midst of an election season. *Cf. In re Khanoyan*, 637 S.W.3d 762, 764 (Tex. 2022) (cautioning that "invoking judicial authority in the election context requires unusual dispatch—the sort of speed not reasonably demanded of parties and lawyers when interests less compelling than our society's need for smooth and uninterrupted elections are at stake"). Equitable principles require reasonable swiftness by the party seeking relief, and that requirement is especially heightened if the party is asking a court to undertake the grave task of declaring unconstitutional a duly enacted state law. *See id.*

Second, even if this Court were inclined to be the first court to consider this significant question of constitutional law despite it unnecessarily arising on an emergency basis, Relator would be unlikely to succeed on the merits and to establish "a clear abuse of discretion" to be entitled to mandamus relief. *See In re Dall. HERO*, 698 S.W.3d 242, 247 (Tex. 2024). We need not conclusively resolve the merits to observe that Relator's contention—that Section 172.021(g)'s signature requirement is facially unconstitutional because it imposes additional eligibility requirements for office beyond what is required under the Texas Constitution—faces a number of serious problems.

True, as Relator observes, the Texas Constitution enumerates the eligibility requirements for a person to serve in the office of the chief justice or justice of the Texas Supreme Court, *see* TEX. CONST. art. 5, § 2(b), and "it is beyond the power of the Legislature to add another ground of disqualification" beyond those listed in the Constitution. *State ex rel. Candler v. Ct. of Civ. Appeals, Fourth Sup. Jud. Dist.*, 75 S.W.2d

3

253, 257 (Tex. 1934) (quoting *Kilday v. State ex rel. Candler*, 75 S.W.2d 148, 150 (Tex. App.—San Antonio 1934, no writ)). For this principle to play a role in this case, however, we would have to embrace Relator's assumption that anything that affects placement on the ballot constitutes an "eligibility requirement." If that were so, then the filing fee—which Relator paid and does not challenge—would constitute an eligibility requirement. And so, perhaps, would compliance with any date restrictions until ballots had to be printed. Section 172.021(g)'s signature requirement at least plausibly constitutes a procedural requirement for orderly election administration rather than an additional ground of disqualification from holding public office wholly aside from compliance with statutory procedures. *Cf., e.g., Dickson v. Strickland*, 265 S.W. 1012, 1015-16 (Tex. 1924) (concluding, as part of its analysis of the trial court's jurisdiction, that the Legislature could not add a statutory residency requirement to the constitutional eligibility requirements for the office of Governor). A legal requirement that foreclosed a citizen's ability to serve at all would implicate the constitutional principle, but the signature requirement is at least plausibly merely part of the broader procedure for a candidate to be placed on the primary election ballot.

"Our Court has long held that 'a candidate's access to the ballot is an important value to our democracy.'" *In re Morris*, 683 S.W.3d 396, 397 (Tex. 2024) (quoting *In re Green Party of Tex.*, 630 S.W.3d 36, 40 (Tex. 2020)). It follows that for "the people [to] decide who their leaders will be," *id.*, there must be an orderly process for elections, whether the primary or general, to present to the people the qualifying candidates

4

for each relevant office. *Cf. Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983) ("The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."); *Bullock v. Carter*, 405 U.S. 134, 145 (1972) ("Moreover, a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies."). Accordingly, just as the Legislature provides regulations for voter registration to "preserve the purity of the ballot box," TEX. CONST. art. 6, § 4, the Legislature also enacts statutory provisions governing the procedure a candidate must follow to be included on the primary election ballot. Given Relator's inability to establish a likelihood of success, it would be especially improvident for the Court to exercise its discretion to authoritatively address the constitutional question he presents.[1]

Third, Relator has not provided his complete application and petition that would allow us to examine the record. *See* TEX. R. APP. P. 52.7(a) (requiring relator to include a copy "of every document that is material to the relator's claim for relief"). True, a facial constitutional challenge may require less by way of a record than other kinds of claims.

---

[1] Relator also contends that the Republican Party of Texas's chair failed to adequately notify him of his application's deficiencies. *See* TEX. ELEC. CODE § 172.0222(b) (requiring the political party to review an application "to determine whether it complies with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the general primary election ballot"). Contrary to Relator's assertion, however, a representative of the Republican Party's chair did in fact "deliver to [him] written notice of the reason for the rejection." *Id.* § 172.0222(g).

5

For example, Relator does not contend that the party has wrongly excluded signatures that were in fact valid or that he should be entitled to cure any deficiency. Claims like that *would* require a full record. Nonetheless, the failure to provide a meaningful record at all only emphasizes that this petition is poorly suited to generate the kind of constitutional decision that it demands.[2]

Fourth, the nature of Relator's claim and the relief he seeks implicate a host of other constitutional issues that Relator does not acknowledge, including the associational rights of political parties under the United States and Texas Constitutions. *See, e.g.*, *Cal. Democratic Party v. Jones*, 530 U.S. 567 (2000); *Cousins v. Wigoda*, 419 U.S. 477 (1975). We do not purport to identify all such issues, much less analyze them. But the existence of these downstream, unaddressed considerations only further underscores the serious impropriety of creating a needless emergency to seek relief for claims that could have been considered and resolved long ago. *Cf. Khanoyan*, 637 S.W.3d at 764.

---

[2] On December 18—nearly a week after he submitted this mandamus petition—Relator submitted a new motion asking the Court to "order Respondent to immediately transfer to the clerk of the court the ballot access petition that Relator filed with Respondent." Our rules require a relator to supply the mandamus record when seeking relief in this Court rather than, at some later point, shifting that obligation to an adverse party. *See* TEX. R. APP. P. 52.7(a). We need not opine as to the proper procedure when an essential part of a record is uniquely within another party's possession because Relator offers no explanation as to why he cannot submit to us his own copy of his complete application. In any event, our decision today would not change even if Respondent unilaterally supplied the application. The December 18 motion is denied.

6

We therefore formally reserve any constitutional decision until a proper case comes, if one ever does.  We hold only that, on the narrow issue presented, Relator is not entitled to mandamus relief. Accordingly, without hearing oral argument, we deny his petition.


**OPINION DELIVERED:** December 22, 2025